(Slip Opinion)          OCTOBER TERM, 2009                    1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HARDT *v*. RELIANCE STANDARD LIFE INSURANCE CO.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 09–448.   Argued April 26, 2010—Decided May 24, 2010

After medical problems forced petitioner Hardt to stop working, she filed for long-term disability benefits under her employer's long-term disability plan.  Upon exhausting her administrative remedies, Hardt sued respondent Reliance, her employer's disability insurance carrier, alleging that it had violated the Employee Retirement Income Security Act of 1974 (ERISA) by wrongfully denying her benefits claim.  The District Court denied Reliance summary judgment, finding that because the carrier had acted on incomplete medical information, the benefits denial was not based on substantial evidence.  Though also denying Hardt summary judgment, the court stated that it found "compelling evidence" in the record that she was totally disabled and that it was inclined to rule in her favor, but concluded that it would be unwise to do so without giving Reliance the chance to address the deficiencies in its approach.  The court therefore remanded to Reliance, giving it 30 days to consider all the evidence and to act on Hardt's application, or else the court would enter judgment in Hardt's favor.  Reliance did as instructed and awarded Hardt benefits.  Hardt then filed a motion under 29 U. S. C. §1132(g)(1), a fee-shifting statute that applies in most ERISA lawsuits and provides that "the court in its discretion may allow a reasonable attorney's fee and costs . . . to either party."  Granting the motion, the District Court applied the Circuit's framework governing attorney's fee requests in ERISA cases, concluding, *inter alia,* that Hardt had attained the requisite "prevailing party" status.  The Fourth Circuit vacated the fees award, holding that Hardt had failed to establish that she qualified as a "prevailing party" under the rule set forth in *Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health*

*and Human Resources*, 532 U. S. 598, 604, that a fee claimant is a "prevailing party" only if he has obtained an "enforceable judgmen[t] on the merits " or a "court-ordered consent decre[e]. "  The court reasoned that because the remand order did not require Reliance to award Hardt benefits, it did not constitute an enforceable judgment on the merits.

*Held:*

  1. A fee claimant need not be a "prevailing party" to be eligible for an attorney's fees award under §1132(g)(1).  Interpreting the section to require a party to attain that status is contrary to §1132(g)(1)'s plain text.  The words "prevailing party" do not appear in the provision.  Nor does anything else in §1132(g)(1)'s text purport to limit the availability of attorney's fees to a "prevailing party."   Instead, §1132(g)(1) expressly grants district courts "discretion" to award attorney's fees "to *either* party."  (Emphasis added.)  That language contrasts sharply with §1132(g)(2), which governs the availability of attorney's fees in ERISA actions to recover delinquent employer contributions to a multiemployer plan.  In such cases, only plaintiffs who obtain "a judgment in favor of the plan" may seek attorney's fees. §1132(g)(2)(D).  The contrast between these two paragraphs makes clear that Congress knows how to impose express limits on the availability of attorney's fees in ERISA cases.  Because Congress failed to include in §1132(g)(1) an express "prevailing party" requirement, the Fourth Circuit's decision adding that term of art to the statute more closely resembles "invent[ing] a statute rather than interpret[ing] one." *Pasquantino* v. *United States*, 544 U. S. 349, 359.  Pp. 8–9.

  2. A court may award fees and costs under §1132(g)(1), as long as the fee claimant has achieved "some degree of success on the merits." *Ruckelshaus* v. *Sierra Club*, 463 U. S. 680, 694.  The bedrock principle known as the American Rule provides the relevant point of reference: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.  *E.g., id.,* at 683–686.  This Court's "prevailing party" precedents do not govern here because that term of art does not appear in §1132(g)(1).  Instead, the Court interprets §1132(g)(1) in light of its precedents addressing statutes that deviate from the American Rule by authorizing attorney's fees based on other criteria.  *Ruckelshaus,* which considered a statute authorizing a fees award if the court "determines that such an award is appropriate," 42 U. S. C. §7607(f), is the principal case in that category.  Applying that decision's interpretive approach to 29 U. S. C. §1132(g)(1), the Court first looks to "the language of the section," 463 U. S., at 682, which unambiguously allows a court to award attorney's fees "in its discretion . . . to either party."  *Ruckelshaus* also lays down the proper markers to guide a court in exercising that discre-

Syllabus

tion. Because here, as in the statute in *Ruckelshaus*, Congress failed to indicate clearly that it "meant to abandon historic fee-shifting principles and intuitive notions of fairness," 463 U. S., at 686, a fees claimant must show "some degree of success on the merits" before a court may award attorney's fees under §1132(g)(1), see *id.*, at 694. Hardt has satisfied that standard. Though she failed to win summary judgment on her benefits claim, the District Court nevertheless found compelling evidence that she is totally disabled and stated that it was inclined to rule in her favor. She also obtained the remand order, after which Reliance conducted the court-ordered review, reversed its decision, and awarded the benefits she sought. Accordingly, the District Court properly exercised its discretion to award Hardt attorney's fees. Pp. 9–13.

336 Fed. Appx. 332, reversed and remanded.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, GINSBURG, BREYER, ALITO, and SOTOMAYOR, JJ., joined, and in which STEVENS, J., joined as to Parts I and II. STEVENS, J., filed an opinion concurring in part and concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———

No. 09–448

———

## BRIDGET HARDT, PETITIONER *v.* RELIANCE STANDARD LIFE INSURANCE COMPANY

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[May 24, 2010]

JUSTICE THOMAS delivered the opinion of the Court.

In most lawsuits seeking relief under the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U. S. C. §1001 *et seq.*, "a reasonable attorney's fee and costs" are available "to either party" at the court's "discretion." §1132(g)(1). The Court of Appeals for the Fourth Circuit has interpreted §1132(g)(1) to require that a fee claimant be a "prevailing party" before he may seek a fees award. We reject this interpretation as contrary to §1132(g)(1)'s plain text. We hold instead that a court "in its discretion" may award fees and costs "to either party," *ibid.,* as long as the fee claimant has achieved "some degree of success on the merits," *Ruckelshaus* v. *Sierra Club*, 463 U. S. 680, 694 (1983).

I

In 2000, while working as an executive assistant to the president of textile manufacturer Dan River, Inc., petitioner Bridget Hardt began experiencing neck and shoulder pain. Her doctors eventually diagnosed her with carpal tunnel syndrome. Because surgeries on both her wrists failed to alleviate her pain, Hardt stopped working

in January 2003.

In August 2003, Hardt sought long-term disability benefits from Dan River's Group Long-Term Disability Insurance Program Plan (Plan). Dan River administers the Plan, which is subject to ERISA, but respondent Reliance Standard Life Insurance Company decides whether a claimant qualifies for benefits under the Plan and underwrites any benefits awarded. Reliance provisionally approved Hardt's claim, telling her that final approval hinged on her performance in a functional capacities evaluation intended to assess the impact of her carpal tunnel syndrome and neck pain on her ability to work.

Hardt completed the functional capacities evaluation in October 2003. The evaluator summarized Hardt's medical history, observed her resulting physical limitations, and ultimately found that Hardt could perform some amount of sedentary work. Based on this finding, Reliance concluded that Hardt was not totally disabled within the meaning of the Plan and denied her claim for disability benefits. Hardt filed an administrative appeal. Reliance reversed itself in part, finding that Hardt was totally disabled from her regular occupation, and was therefore entitled to temporary disability benefits for 24 months.

While her administrative appeal was pending, Hardt began experiencing new symptoms in her feet and calves, including tingling, pain, and numbness. One of her physicians diagnosed her with small-fiber neuropathy, a condition that increased her pain and decreased her physical capabilities over the ensuing months.

Hardt eventually applied to the Social Security Administration for disability benefits under the Social Security Act. Her application included questionnaires completed by two of her treating physicians, which described Hardt's symptoms and stated the doctors' conclusion that Hardt could not return to full gainful employment because of her neuropathy and other ailments. In February 2005, the

Social Security Administration granted Hardt's applica-
tion and awarded her disability benefits.

About two months later, Reliance told Hardt that her
Plan benefits would expire at the end of the 24-month
period. Reliance explained that under the Plan's terms,
only individuals who are "totally disabled from all occupa-
tions" were eligible for benefits beyond that period, App. to
Pet. for Cert. 36a, and adhered to its conclusion that,
based on its review of Hardt's records, Hardt was not
"totally disabled" as defined by the Plan. Reliance also
demanded that Hardt pay Reliance $14,913.23 to offset
the disability benefits she had received from the Social
Security Administration. (The Plan contains a provision
coordinating benefits with Social Security payments.)
Hardt paid Reliance the offset.

Hardt then filed another administrative appeal. She
gave Reliance all of her medical records, the question-
naires she had submitted to the Social Security Admini-
stration, and an updated questionnaire from one of her
physicians. Reliance asked Hardt to supplement this
material with another functional capacities evaluation.
When Reliance referred Hardt for the updated evaluation,
it did not ask the evaluator to review Hardt for neuro-
pathic pain, even though it knew that Hardt had been
diagnosed with neuropathy after her first evaluation.

Hardt appeared for the updated evaluation in December
2005, and appeared for another evaluation in January
2006. The evaluators deemed both evaluations invalid
because Hardt's efforts were "submaximal." *Id.*, at 37a.
One evaluator recorded that Hardt "refused multiple tests
. . . for fear of nausea/illness/further pain complaints."
*Ibid.* (internal quotation marks omitted).

Lacking an updated functional capacities evaluation,
Reliance hired a physician and a vocation rehabilitation
counselor to help it resolve Hardt's administrative appeal.
The physician did not examine Hardt; instead, he re-

viewed some, but not all, of Hardt's medical records. Based on that review, the physician produced a report in which he opined that Hardt's health was expected to improve. His report, however, did not mention Hardt's pain medications or the questionnaires that Hardt's attending physicians had completed as part of her application for Social Security benefits. The vocational rehabilitation counselor, in turn, performed a labor market study (based on Hardt's health in 2003) that identified eight employment opportunities suitable for Hardt. After reviewing the physician's report, the labor market study, and the results of the 2003 functional capacities evaluation, Reliance concluded that its decision to terminate Hardt's benefits was correct. It advised Hardt of this decision in March 2006.

After exhausting her administrative remedies, Hardt sued Reliance in the United States District Court for the Eastern District of Virginia. She alleged that Reliance violated ERISA by wrongfully denying her claim for long-term disability benefits. See §1132(a)(1)(B). The parties filed cross-motions for summary judgment, both of which the District Court denied.

The court first rejected Reliance's request for summary judgment affirming the denial of benefits, finding that "Reliance's decision to deny benefits was based on incomplete information." App. to Pet. for Cert. 42a. Most prominently, none of the functional capacities evaluations to which Hardt had submitted had "assessed the impact of neuropathy and neuropathic pain on Ms. Hardt." *Ibid.* In addition, the reviewing physician's report "was itself incomplete"; the basis for the physician's "medical conclusions [wa]s extremely vague and conclusory," *ibid.*, and the physician had "failed to cite any medical evidence to support his conclusions," *id.*, at 43a, or "to address the treating physicians' contradictory medical findings," *id.*, at 44a. The court also found that Reliance had "improperly

rejected much of the evidence that Ms. Hardt submitted," *id.*, at 45a, and had "further ignored the substantial amount of pain medication Ms. Hardt's treating physicians had prescribed to her," *id.*, at 46a. Accordingly, the court thought it "clear that Reliance's decision to deny Ms. Hardt long-term disability benefits was not based on substantial evidence." *Id.*, at 47a.

The District Court then denied Hardt's motion for summary judgment, which contended that Reliance's decision to deny benefits was unreasonable as a matter of law. In so doing, however, the court found "compelling evidence" in the record that "Ms. Hardt [wa]s totally disabled due to her neuropathy." *Id.*, at 48a. Although it was "inclined to rule in Ms. Hardt's favor," the court concluded that "it would be unwise to take this step without first giving Reliance the chance to address the deficiencies in its approach." *Ibid.* In the District Court's view, a remand to Reliance was warranted because "[t]his case presents one of those scenarios where the plan administrator has failed to comply with the ERISA guidelines," meaning "Ms. Hardt did not get the kind of review to which she was entitled under applicable law." *Ibid.* Accordingly, the court instructed "Reliance to act on Ms. Hardt's application by adequately considering all the evidence" within 30 days; "[o]therwise," it warned, "judgment will be issued in favor of Ms. Hardt." *Id.*, at 49a.

Reliance did as instructed. After conducting that review, Reliance found Hardt eligible for long-term disability benefits and paid her $55,250 in accrued, past-due benefits.

Hardt then moved for attorney's fees and costs under §1132(g)(1). The District Court assessed her motion under the three-step framework that governed fee requests in ERISA cases under Circuit precedent. At step one of that framework, a district court asks whether the fee claimant is a "'prevailing party.'" *Id.*, at 15a–16a (quoting *Martin*

v. *Blue Cross & Blue Shield of Virginia, Inc.*, 115 F. 3d 1201, 1210 (CA4 1997), and citing *Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health and Human Resources*, 532 U. S. 598, 603 (2001)). If the fee claimant qualifies as a prevailing party, the court proceeds to step two and "determin[es] whether an award of attorneys' fees is appropriate" by examining "five factors."[1] App. to Pet. for Cert. 16a. Finally, if those five factors suggest that a fees award is appropriate, the court "must review the attorneys' fees and costs requested and limit them to a reasonable amount." *Id.*, at 17a (citing *Hensley* v. *Eckerhart*, 461 U. S. 424, 433 (1983)).

Applying that framework, the District Court granted Hardt's motion. It first concluded that Hardt was a prevailing party because the court's remand order "sanctioned a material change in the legal relationship of the parties by ordering [Reliance] to conduct the type of review to which [Hardt] was entitled." *Id.*, at 22a. The court recognized that the order did not "sanctio[n] a certain result on remand," but found that it "quite clearly expressed the consequences to [Reliance] were it to fail to complete its reconsideration in an expeditious manner." *Id.*, at 19a. Accordingly, the remand order "signif[ied] that the court was displeased with the cursory review that [Reliance] had initially given to [Hardt's] claim, but was inclined to reserve judgment and permit [Reliance] to conduct a proper review of all of the medical evidence." *Ibid.* The

---

[1] These factors are: "'(1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.'" App. to Pet. for Cert. 16a (quoting *Quesinberry* v. *Life Ins. Co. of North Am.,* 987 F. 2d 1017, 1029 (CA4 1993)).

court next concluded that a fees award was appropriate under the five-factor test, see *id.*, at 22a–25a, and awarded $39,149 in fees and costs, *id.*, at 25a–30a.

Reliance appealed the fees award, and the Court of Appeals vacated the District Court's order. According to the Court of Appeals, Hardt failed to satisfy the step-one inquiry—*i.e.*, she failed to establish that she was a "prevailing party." In reaching that conclusion, the Court of Appeals relied on this Court's decision in *Buckhannon*, under which a fee claimant qualifies as a "prevailing party" only if he has obtained an "'enforceable judgmen[t] on the merits'" or a "'court-ordered consent decre[e].'" 336 Fed. Appx. 332, 335 (CA4 2009) *(per curiam)* (quoting 532 U. S., at 604). The Court of Appeals reasoned that because the remand order "did not require Reliance to award benefits to Hardt," it did "not constitute an 'enforceable judgment on the merits' as *Buckhannon* requires," thus precluding Hardt from establishing prevailing party status. 336 Fed. Appx., at 336 (brackets omitted).

Hardt filed a petition for a writ of certiorari seeking review of two aspects of the Court of Appeals' judgment. First, did the Court of Appeals correctly conclude that §1132(g)(1) permits courts to award attorney's fees only to a "prevailing party"?[2] Second, did the Court of Appeals

_____

[2] The Courts of Appeals are divided on this issue. Some (a few only tentatively) agree with the Court of Appeals' conclusion here that only prevailing parties are entitled to fees under §1132(g)(1). See, *e.g., Cottrill* v. *Sparrow, Johnson & Ursillo, Inc.*, 100 F. 3d 220, 225 (CA1 1996) ("Congress declared that, in any ERISA claim advanced by a 'participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee' *to the prevailing party*" (emphasis added)); *Tate* v. *Long Term Disability Plan for Salaried Employees of Champion Int'l Corp. #506*, 545 F. 3d 555, 564 (CA7 2008) ("In analyzing whether attorney's fees should be awarded to a 'prevailing party' in an ERISA case, a court should consider whether the losing party's position was justified an taken in good faith. However, we have held that a claimant who is awarded a remand in an ERISA case generally

correctly identify the circumstances under which a fee claimant is entitled to attorney's fees under §1132(g)(1)? We granted certiorari. 558 U. S. ___ (2010).

## II

Whether §1132(g)(1) limits the availability of attorney's fees to a "prevailing party" is a question of statutory construction. As in all such cases, we begin by analyzing the statutory language, "assum[ing] that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross* v. *FBL Financial Services, Inc.*, 557 U. S. ___, ___ (2009) (slip op., at 7) (internal quotation marks omitted). We must enforce plain and unambiguous statutory language according to its terms. *Carcieri* v. *Salazar*, 555 U. S. ___, ___ (2009) (slip op., at 7); *Jimenez* v. *Quarterman*, 555 U. S. ___, ___ (2009) (slip op., at 5).

Section 1132(g)(1) provides:

> "In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

The words "prevailing party" do not appear in this provision. Nor does anything else in §1132(g)(1)'s text purport to limit the availability of attorney's fees to a "prevailing party." Instead, §1132(g)(1) expressly grants district courts "discretion" to award attorney's fees "to *either*

_____

is not a prevailing party in the truest sense of the term" (some internal quotation marks and citation omitted)); *Graham* v. *Hartford Life and Accident Ins. Co.*, 501 F. 3d 1153, 1162 (CA10 2007) ("We also afford certain weight to prevailing party status, even though we acknowledge that the ERISA attorney's fees provision is not expressly directed at prevailing parties"). Other Courts of Appeals have rejected or disavowed that position. See, *e.g., Miller* v. *United Welfare Fund*, 72 F. 3d 1066, 1074 (CA2 1995); *Gibbs* v. *Gibbs*, 210 F. 3d 491, 503 (CA5 2000); *Freeman* v. *Continental Ins. Co.*, 996 F. 2d 1116, 1119 (CA11 1993).

party." (Emphasis added.)

That language contrasts sharply with §1132(g)(2), which governs the availability of attorney's fees in ERISA actions under §1145 (actions to recover delinquent employer contributions to a multiemployer plan). In such cases, only plaintiffs who obtain "a judgment in favor of the plan" may seek attorney's fees. §1132(g)(2)(D). The contrast between these two paragraphs makes clear that Congress knows how to impose express limits on the availability of attorney's fees in ERISA cases. Because Congress failed to include in §1132(g)(1) an express "prevailing party" limit on the availability of attorney's fees, the Court of Appeals' decision adding that term of art to a fee-shifting statute from which it is conspicuously absent more closely resembles "invent[ing] a statute rather than interpret[ing] one." *Pasquantino* v. *United States*, 544 U. S. 349, 359 (2005) (internal quotation marks omitted).

We see no reason to dwell any longer on this question, particularly given Reliance's concessions. See Brief for Respondent 9–10 ("On its face," §1132(g)(1) "does not expressly demand, like so many statutes, that a claimant be a 'prevailing party' before receiving attorney's fees"). We therefore hold that a fee claimant need not be a "prevailing party" to be eligible for an attorney's fees award under §1132(g)(1).

## III

We next consider the circumstances under which a court may award attorney's fees pursuant to §1132(g)(1). "Our basic point of reference" when considering the award of attorney's fees is the bedrock principle known as the "'American Rule'": Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise. *Ruckelshaus*, 463 U. S., at 683; see *id.*, at 683–686; *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240, 247 (1975); *Buckhannon*, *supra*, at 602–603;

see also *Perdue* v. *Kenny A.*, 559 U. S. ___, ___ (2010) (slip op., at 5). Statutory changes to this rule take various forms. Most fee-shifting provisions permit a court to award attorney's fees only to a "prevailing party."[3] Others permit a "substantially prevailing" party[4] or a "successful" litigant[5] to obtain fees. Still others authorize district courts to award attorney's fees where "appropriate,"[6] or simply vest district courts with "discretion" to award fees.[7]

Of those statutory deviations from the American Rule, we have most often considered statutes containing an express "prevailing party" requirement. See, *e.g., Texas State Teachers Assn.* v. *Garland Independent School Dist.*, 489 U. S. 782, 792–793 (1989); *Farrar* v. *Hobby*, 506 U. S. 103, 109–114 (1992); *Buckhannon*, *supra*, at 602–606; *Sole* v. *Wyner*, 551 U. S. 74, 82–86 (2007). Our "prevailing party" precedents, however, do not govern the availability of fees awards under §1132(g)(1), because this provision does not limit the availability of attorney's fees to the "prevailing party." *Supra*, at 8–9; see also *Gross*, *supra*, at ___, (slip op., at 6) (cautioning courts "conducting statutory interpretation . . . 'not to apply rules applicable under one statute to a different statute without careful and critical examination'" (quoting *Federal Express Corp.* v. *Holowecki*, 552 U. S. 389, 393 (2008))).

Instead, we interpret §1132(g)(1) in light of our precedents addressing statutory deviations from the American Rule that do not limit attorney's fees awards to the "pre-

—————

[3] See, *e.g., Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health and Human Resources*, 532 U. S. 598, 601–603 (2001) (citing examples); *Ruckelshaus* v. *Sierra Club*, 463 U. S. 680, 684, n. 3 (1983) (same).

[4] See *ibid.,* n. 4 (citing examples).

[5] See, *e.g.,* 18 U. S. C. §2707(c); *Ruckelshaus*, *supra*, at 684, n. 5 (citing examples).

[6] See *Ruckelshaus*, *supra*, at 682, n. 1 (citing examples).

[7] See, *e.g.,* 15 U. S. C. §§77k(e), 77www(a), 78i(e), 78r(a), 7706(g)(4); 20 U. S. C. §1415(i)(3)(B)(i); 42 U. S. C. §2000aa–6(f).

vailing party." In that line of precedents, *Ruckelshaus* is the principal case. There, the Court interpreted §307(f) of the Clean Air Act, which authorizes a court to award fees "whenever it determines that such an award is appropriate." 42 U. S. C. §7607(f). We began by noting that because nothing in §307(f)'s text "clear[ly] show[ed]" that Congress meant to abandon the American Rule, 463 U. S., at 685, fee claimants must have achieved some litigating success to be eligible for a fees award under that section, *id.*, at 686. We then concluded that by using the less stringent "whenever . . . appropriate" standard instead of the traditional "prevailing party" standard, Congress had "expand[ed] the class of parties eligible for fees awards from prevailing parties to *partially prevailing* parties— parties achieving *some success*, even if not major success." *Id.*, at 688. We thus held "that, absent some degree of success on the merits by the claimant, it is not 'appropriate' for a federal court to award attorney's fees under §307(f)." *Id.*, at 694.

Applying the interpretive approach we employed in *Ruckelshaus* to §1132(g)(1), we first look to "the language of the section," *id.,* at 682, which unambiguously allows a court to award attorney's fees "in its discretion . . . to either party," §1132(g)(1). Statutes vesting judges with such broad discretion are well known in the law, particularly in the attorney's fees context. See, *e.g.,* n. 7, *supra;* see also *Perdue*, 559 U. S., at ___ (slip op., at 14).

Equally well known, however, is the fact that a "judge's discretion is not unlimited." *Ibid.* Consistent with Circuit precedent, the District Court applied five factors to guide its discretion in deciding whether to award attorney's fees under §1132(g)(1). See *supra*, at 6, and n. 1. Because these five factors bear no obvious relation to §1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section.

Instead, *Ruckelshaus* lays down the proper markers to guide a court in exercising the discretion that §1132(g)(1) grants. As in the statute at issue in *Ruckelshaus*, Congress failed to indicate clearly in §1132(g)(1) that it "meant to abandon historic fee-shifting principles and intuitive notions of fairness." 463 U. S., at 686. Accordingly, a fees claimant must show "some degree of success on the merits" before a court may award attorney's fees under §1132(g)(1), *id.*, at 694. A claimant does not satisfy that requirement by achieving "trivial success on the merits" or a "purely procedural victor[y]," but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a "lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" *Id.*, at 688, n. 9.[8]

Reliance essentially agrees that this standard should govern fee requests under §1132(g)(1), see Brief for Respondent 13–31, but argues that Hardt has not satisfied it. Specifically, Reliance contends that a court order remanding an ERISA claim for further consideration can never constitute "some success on the merits," even if such a remand results in an award of benefits. See *id.,* at 34–50.

Reliance's argument misses the point, given the facts of this case. Hardt persuaded the District Court to find that "the plan administrator has failed to comply with the ERISA guidelines" and "that Ms. Hardt did not get the kind of review to which she was entitled under applicable law." App. to Pet. for Cert. 48a; see 29 U. S. C. §1133(2), 29 CFR §2560.503–1(h) (2009). Although Hardt failed to win summary judgment on her benefits claim, the District

---

[8] We do not foreclose the possibility that once a claimant has satisfied this requirement, and thus becomes eligible for a fees award under §1132(g)(1), a court may consider the five factors adopted by the Court of Appeals, see n. 1, *supra*, in deciding whether to award attorney's fees.

Court nevertheless found "compelling evidence that Ms. Hardt is totally disabled due to her neuropathy," and stated that it was "inclined to rule in Ms. Hardt's favor" on her benefits claim, but declined to do so before "first giving Reliance the chance to address the deficiencies in its" statutorily mandated "full and fair review" of that claim. App. to Pet. for Cert. 48a; 29 U. S. C. §1133(2). Hardt thus obtained a judicial order instructing Reliance "to act on Ms. Hardt's application by adequately considering all the evidence" within 30 days; "[o]therwise, judgment will be issued in favor of Ms. Hardt." App. to Pet. for Cert. 49a. After Reliance conducted that court-ordered review, and consistent with the District Court's appraisal, Reliance reversed its decision and awarded Hardt the benefits she sought. App. 120a–123a.

These facts establish that Hardt has achieved far more than "trivial success on the merits" or a "purely procedural victory." Accordingly, she has achieved "some success on the merits," and the District Court properly exercised its discretion to award Hardt attorney's fees in this case. Because these conclusions resolve this case, we need not decide today whether a remand order, without more, constitutes "some success on the merits" sufficient to make a party eligible for attorney's fees under §1132(g)(1).[9]

\* \* \*

We reverse the judgment of the Court of Appeals for the Fourth Circuit and remand this case for proceedings consistent with this opinion.

*It is so ordered.*

---

[9] Reliance has not preserved any separate objection to the reasonableness of the amount of fees awarded. See *Perdue* v. *Kenny A.*, 559 U. S. ___, ___ (2010) (slip op., at 7–8, 14).

# SUPREME COURT OF THE UNITED STATES

_____

No. 09–448

_____

## BRIDGET HARDT, PETITIONER *v.* RELIANCE STANDARD LIFE INSURANCE COMPANY

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[May 24, 2010]

JUSTICE STEVENS, concurring in part and concurring in the judgment.

While I join the Court's judgment and Parts I and II of its opinion, I do not believe that our mistaken interpretation of §307(f) of the Clean Air Act in *Ruckelshaus* v. *Sierra Club*, 463 U. S. 680 (1983), should be given any special weight in the interpretation of this—or any other—different statutory provision. The outcome in that closely divided case turned, to a significant extent, on a judgment about how to read the legislative history of the provision in question. Compare *id.,* at 686–693, with *id.,* at 703–706 (STEVENS, J., dissenting). I agree with the Court in this case that 29 U. S. C. §1132(g)(1) does not impose a "prevailing party" requirement; I agree, further, that the District Court acted well within its discretion in awarding attorney's fees to this petitioner. But I would examine the text, structure, and history of any other federal statute authorizing an award of fees before concluding that Congress intended the same approach under that statute as under this one.