John DOE, Plaintiff,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.

Case No. CV–15–04089–AB (FFMx)

United States District Court, C.D. California.

Signed 07/07/2017

James P. Keenley, Brian Henry Kim, Emily A. Bolt, Bolt Keenley Kim, LLP, Berkeley, CA, for Petitioner.

Cindy Nguyen Mader, Linda Marie Lawson, Jason A. James, Meserve Mum-

per and Hughes, LLP, Los Angeles, CA, Amanda A. Sonneborn, Seyfarth Shaw LLP, Chicago, IL, for Respondent.

## ORDER (1) GRANTING DEFENDANT'S MOTION TO CLARIFY AND (2) GRANTING PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT AND AWARD OF BENEFITS, FEES, AND COSTS

HONORABLE ANDRÉ BIROTTE JR., UNITED STATES DISTRICT COURT JUDGE

Before the Court is Defendant Prudential Insurance Company of America's ("Prudential") Motion for Clarification and/or Modification (Dkt. No. 98) and Plaintiff John Doe's Motion for Entry of Judgment, Award of Benefits, Prejudgment Interest, Attorneys' Fees, and Costs of Suit (Dkt. No. 99). Oppositions and replies were filed with respect to both Motions. For the following reasons, the Court **GRANTS** both Motions.

### I. BACKGROUND

This is an action for benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* Following a bench trial, on March 27, 2017, the Court entered findings of fact and conclusions of law in Plaintiff's favor, finding that Prudential improperly terminated his long-term disability benefits, and ordering Prudential to reinstate them. *See* Order (Dkt. No. 89). The instant motions follow. The Court will address them in turn.

### II. PRUDENTIAL'S MOTION TO CLARIFY/MODIFY

Prudential points out that two terms of the Order's declaratory and injunctive relief are inconsistent with each other and with the Plan. The two terms are: "the

Court ... (3) DECLARES that Plaintiff is entitled to receive future monthly disability benefit payments *under the terms of the Plan*; and (4) ORDERS Prudential to issue monthly benefit payments *until Plaintiff reaches the maximum benefit duration without subjecting Plaintiff to further claims procedures* with respect to his claim for benefits under the Plan." *See* Order 30:4–15 (emphasis added).

Prudential contends that the italicized language is inconsistent. The Plan requires Prudential to terminate Plaintiff's benefits if he is "no longer disabled" and to reduce his benefits if he returns to work or receives other deductible income. *See* Mot. 6:12–24 (quoting Plan). Thus, insofar as the Order's term 4 can be read to mean that Plaintiff is *unconditionally* entitled to future benefit payments and that Prudential cannot apply its ordinary claims procedures, it is inconsistent with the Plan and with term 3, which states that Plaintiff's entitlement is "under the terms of the Plan."

■ The Court cannot award Plaintiff any benefits beyond what the Plan allows. *See, e.g., Stout v. Hartford Life & Acc. Ins. Co.*, 2012 WL 762024, at *1 (N.D. Cal. Mar. 8, 2012) ("Plaintiff may not obtain an order that she is entitled to an unconditional award of future benefits."); *Welsh v. Burlington N., Inc., Employee Benefits Plan*, 54 F.3d 1331, 1340 (8th Cir. 1995) (affirming award of past disability benefits due and declaration that plaintiff "is entitled to disability benefits in the future for as long as he is disabled or until he is 65 years old, whichever occurs first ... We note, in addition, that nothing prevents the health insurance plan from evaluating whether Mr. Welsh continues to be disabled in the future and continues to provide the documentation of that disability required under the terms of the contract."). Term 4 of the Order was not

intended to establish Plaintiff's unconditional entitlement to future benefits because that would be inconsistent with the Plan. Term 4 was merely intended to reflect that whether Plaintiff's disability was subject to the mental health limitation is a closed question that shall not be subject to further dispute. Term 4 was not intended to bar Prudential from applying its ordinary claim administration procedures to Plaintiff. Indeed, Plaintiff appears to agree that Prudential can continue to monitor his employment status to determine his continuing eligibility.

■ Plaintiff takes issue with whether Prudential can monitor his medical condition to determine whether he continues to be medically eligible. The Plan requires Prudential to terminate benefits when Plaintiff is "no longer disabled"; this necessarily means that Prudential can continue to monitor Plaintiff's medical condition. Despite Plaintiff's argument, the language he proposes in his Revised Proposed Judgment is appropriate and the Court will adopt it in its Judgment. *See* Dkt. No.103–2, 2:10–16.

The Court will therefore modify the relief ordered, which will be reflected in the Final Judgment.

## III. PLAINTIFF'S MOTION FOR JUDGMENT, FEES, AND COSTS

### A. Benefits Due

Plaintiff calculates his past benefits due to equal $1,071,936. Prudential argues that this amount should be reduced by $47,717 for payments Plaintiff received from Social Security Disability Insurance ("SSDI"), and which Plaintiff agreed to reimburse Prudential. *See* Mot. 24:1–16. Plaintiff does not dispute the amount of his SSDI award or that he agreed to reimburse Prudential for such payments; rather, he argues that

this is the first time Prudential raised this issue, and that Prudential consistently argued that the court should not consider the SSDI proceedings in deciding this case.

▪ Plaintiff's arguments are unavailing. Prudential previously raised the offset issue in its fourth affirmative defense, which states that any benefits due are subject to applicable offsets. *See* Answer (Dkt. No. 24) 14:1–4. And that Prudential argued that the Court should not consider the SSDI proceedings for purposes of assessing Plaintiff's medical condition does not bar Prudential from enforcing Plaintiff's obligation to reimburse it for SSDI payments he received. The Court therefore finds that the award must be reduced by $47,717 to account for the reimbursable SSDI payments. **Therefore, the Plaintiff's benefits due total $1,025,219.**

### B. Prejudgment Interest

Plaintiff seeks prejudgment interest and proposes several alternative rates. Plaintiff first seeks an annual rate of 14.75%, Prudential's average annual return on equity since July 2013, as disclosed in its annual report. This amount would keep Prudential from receiving a windfall from its failure to pay benefits. In the alternative, Plaintiff seeks a rate of 11.5% to compensate for lost income he would have earned from investing his unpaid benefits in funds he has historically invested in. Finally, Plaintiff says the 10% rate authorized by Cal. Ins. Code § 10111.2 for payments insurers withhold longer than 30 days should be the minimum rate. Prudential argues that prejudgment interest should be limited to the default rate under 28 U.S.C. § 1961, which corresponds to the weekly average Treasury bill rate. During the relevant period, this rate ranged from about 0.1% to 1.18%

▪ Although ERISA does not specifically authorize an award of prejudgment interest, the district court has discretion to award it. *See, e.g., Dishman v. UNUM Life Ins. Co. of Am.,* 269 F.3d 974, 988 (9th Cir.2001). Generally, the interest rate set by 28 U.S.C. § 1961 is appropriate unless the court finds, "on substantial evidence, that the equities of that particular case require a different rate." *Grosz–Salomon v. Paul Revere Life Ins. Co.,* 237 F.3d 1154, 1164 (9th Cir.2001). The interest rate may compensate a plaintiff for "the losses he incurred as a result of [the defendant's] nonpayment of benefits." *Dishman,* 269 F.3d at 988. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blanton v. Anzalone,* 813 F.2d 1574, 1576 (9th Cir.1987).

Here, Plaintiff has submitted substantial evidence that he suffered financial losses from Prudential's non-payment of benefits. Plaintiff states that he relied on his LTD benefits to provide for his daily needs, and that as a result of Prudential terminating them, he invested less in certain well-performing equities and funds, and that had his benefits continued he would have invested more in these funds. *See* Doe Decl. (Dkt. No. 99-2). Plaintiff's investment advisors submitted declarations stating that a substantial part of Plaintiff's portfolio is invested in funds that have earned 11.25% and 11.54% per year on average after July 2013. *See* Berman Decl. (Dkt. No.99-3) ¶¶ 3–5, Singer Decl. (Dkt. No. 994). This evidence shows that Plaintiff suffered a loss of investment income due to Prudential's termination of his benefits, and meets the "substantial evidence" standard. *Blankenship v. Liberty Life Assur. Co. of Boston,* 486 F.3d 620, 628 (9th Cir. 2007) (upholding award of 10.01% interest to compensate for loss of investment income based on similar evidence, stating the "factual findings are supported by the record, and are adequate to satisfy the 'substantial evidence' requirement").

■ To adequately compensate Plaintiff for his losses, the Court finds it appropriate to deviate from the standard Treasury bill rate of between 0.1% and 1.18%. A yearly interest rate of 11.5% is a fair approximation of the interest Plaintiff would have earned on his benefits had Prudential not wrongfully terminated them. This rate is necessary to more closely restore Plaintiff to the position he would have been in had Prudential not wrongfully terminated his benefits. The Court declines to award a rate equal to Prudential's average annual rate of return (14.75%) as this amount is not tied to compensating Plaintiff. Although some courts apply analogous state statutory rates such as that set by Cal. Ins. Code § 10111.2, the Court is satisfied that 11.5% more closely corresponds to Plaintiff's losses. **The Court therefore awards Plaintiff prejudgment interest of 11.5% compounded yearly.**

### C. Attorneys' Fees

Plaintiff also seeks an award of attorneys' fees. The Court awards the fees in full.

#### 1. Plaintiff is Entitled to an Award of Attorneys' Fees.

Section 502(g)(1) of ERISA authorizes the court to award attorney's fees. 29 U.S.C. § 1132(g)(1) ("the court in its discretion may allow a reasonable attorney's fee and costs of action to either party"). A claimant is entitled to attorney's fees "if the court can fairly call the outcome of the litigation some success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255–56, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010). The Ninth Circuit has stated, "[w]e ordinarily grant a prevailing beneficiary in an ERISA action reasonable attorneys' fees and costs, absent special circumstances cautioning against it." *Boston Mut. Ins. v. Murphree*, 242 F.3d 899, 904 (9th Cir. 2001).

Here, there can be no question that Plaintiff achieved more than some success on the merits and is the prevailing party: after a bench trial, the Court issued findings of fact and conclusions of law finding that Prudential wrongfully terminated Plaintiff's LTD benefits, and ordered them reinstated. This is the full scope of relief available to Plaintiff.

■ Prudential does not dispute that Plaintiff is the prevailing party, or argue that "special circumstances" caution against a fee award. Rather, Prudential argues that the five factors set forth in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir. 1980) weigh against a fee award. The Court disagrees with Prudential's analysis of the *Hummell* factors. More importantly, however, it is unnecessary to discuss them in light of the Ninth Circuit's subsequent statement that a prevailing beneficiary is ordinarily entitled to a fee award, *see Boston Mut. Ins*, 242 F.3d at 904, and the Supreme Court's observation that such multi-factored tests "bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, [so] they are not required for channeling a court's discretion when awarding fees under this section." *Hardt*, 560 U.S. at 255, 130 S.Ct. 2149. Here, it is enough to acknowledge that Plaintiff is the prevailing party and that awarding Plaintiff fees is warranted by ERISA's purpose: it "is remedial legislation which should be liberally construed in favor of protecting participants in employee benefit plans" and, specifically, "to afford them effective access to federal courts." *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984). The Court therefore exercises its discretion to award Plaintiff his reasonable attorneys' fees.

#### 2. Lodestar Calculation

■ The attorneys' fees awarded to a prevailing ERISA plaintiff are determined

by the familiar lodestar calculation, which is the number of hours reasonably expended on the matter multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990). Here, Plaintiff's counsel seek a rate of $650/hour for some 536.30 hours of work expended as of the reply, equaling a lodestar of $348,595. *See* Keenley Reply Dec. (Dkt. No. 103–1) ¶ 2.

### a. $650 is a Reasonable Hourly Rate.

▬ Plaintiff submitted detailed declarations from other experienced ERISA specialists substantiating that $650 as a reasonable hourly rate for the three Bolt Keenley Kim LLP attorneys who worked on this case. *See* Dkt. Nos. 99–5, 99–6, 99–7, 99–8. These declarants and Plaintiff cite recent cases finding $650 a reasonable rate for these attorneys and attorneys of similar skill and experience. The Court has reviewed this evidence along with the Keenley Declaration (Dkt. No. 99–1) and finds that $650 is a reasonable hourly rate for each of the three attorneys who worked on Plaintiff's case.

Prudential responds that counsel's rate was only $600 for the bulk of the case. However, it is appropriate to award counsel their current hourly rate of $650 rather than the historical rate to account for the delay in receipt of payment. *See Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007) ("District courts have the discretion to compensate plaintiff's attorneys for a delay in payment by either applying the attorney's current rates to all hours billed during the course of the litigation or using the attorneys' historical rates and adding a prime rate enhancement."). The Court will do so here.

### b. Counsel Reasonably Expended 536.30 Hours.

As of the filing of the reply, Plaintiff's counsel expended 536.30 hours of work on the case. *See* Keenley Reply Dec. (Dkt. No. 103–1) ¶ 2. The Court has reviewed the billing records and finds that they adequately describe the tasks performed and the hours expended to establish that the fees sought are reasonable. *See* Kenley Decl. (Dkt. No. 99–1) Ex. 3, Keenley Reply Decl. Ex. 1. Prudential challenges certain categories of charges. *See* Mader Decl. (Dkt. 101–2), Exs. 1–9.

First, Prudential faults Plaintiff's counsel for expending 13.4 hours on collaboration, suggesting that these hours are excessive and inconsistent with their claimed experience level. The Court has reviewed the challenged entries, *see* Mader Decl. Ex. 1, and finds that they are reasonable: counsel collaborated on matters that lent themselves to collaboration, and these hours were not excessive.

Second, Prudential claims that 45.5 hours for document review was excessive. The Court has reviewed these time entries, *see* Mader Decl. Ex. 2, and finds that they are reasonable. These hours were incurred not merely "reviewing" documents, but also reviewing them to prepare briefs and motions, and to prepare for deposition and trial. The entries are detailed enough to justify the billed hours.

Third, Prudential faults Plaintiff's counsel for expending some 116 hours drafting and editing the trial briefs. *See* Mader Decl. Exh. 3, 4. The Court is well-familiar with the trial briefs filed in this case and the voluminous records filed in support thereof. The trial briefs were, as their name implies, the entirety of Plaintiff's trial, and preparing them with citations to the record was undoubtedly a labor-intensive and time-consuming task. The outcome of the entire case turned on those

filings. Notably, Prudential does not identify any particular entries that are excessive but instead simply faults counsel for expending as much time as they did. This is simply not convincing. The Court has reviewed these entries and finds that they reflect a reasonable number of hours expended on necessary tasks. For the same reasons, the Court rejects Prudential's objections to the hours Plaintiff's counsel spent on opposing its motion to strike (27.90 hours, *see* Mader Decl. Ex. 5) and on their request to file a sur-reply (14.65 hours, *see* Mader Decl. Ex. 6). Furthermore, even though the request to file a sur-reply was unsuccessful, time spent preparing is compensable because that task was reasonable.

 Prudential faults Plaintiff's counsel for spending 18.75 hours preparing for the bench trial, including some 14.25 hours spent by attorneys Bolt and Kim, who did not argue it. *See* Mader Decl. Ex. 7. These objections are meritless. Bolt and Kim logged these hours preparing Mr. Keenley for the bench trial, including by conducting a mock trial. Mr. Keenley could not put himself through a mock trial, obviously co-counsel needed to participate. This is a well-accepted way to prepare for a trial or a hearing, and the hours spent were reasonable. Furthermore, the effectiveness of these preparations was evident in Mr. Keenley's performance at the hearing.

Prudential also claims that counsel had "duplicative" billing for tasks that several of them performed, when only one attorney should have performed the task, such as reviewing the Court's Order and for reviewing and revising the same motion *See* Mader Decl. Ex. 9. This argument is meritless. It is not uncommon and indeed is often necessary for several attorneys to review the same Court order, or for several attorneys to edit the same document. This is simply a form of collaboration. Fur-

thermore, the hours billed were reasonable.

Finally, Prudential seeks a reduction for tasks that were block-billed or otherwise reflect insufficient detail to justify the time spent. *See* Mader Decl. Ex. 8. The Court has reviewed these entries, and they do not constitute block billing. To the contrary, counsel has reasonably attributed a discrete task to each time entry. Furthermore, the entries that reflect a relatively high number of hours are sufficiently specific to justify the time spent: most of the largest time entries are for drafting specific documents, a task that is time-consuming.

For the foregoing reasons, the Court declines to eliminate any hours and calculates the lodestar based on 536.30 hours expended through the filing of the reply brief. **The lodestar is therefore $650/hour x 536.30 hours = $348.595.**

Because neither party asks the court to adjust the lodestar based on the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), the Court's analysis of a reasonable attorneys fee ends with the presumptively reasonable lodestar amount. *See Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006).

### D. Plaintiff's Costs

Plaintiff conceded Prudential's objections to certain elements of costs that it claimed. It now seeks $5,562.60. Prudential did not object to any of the items included in these costs. The Court therefore awards Plaintiff costs in the amount of $5,562.60.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Prudential's Motion to Modify Order, and **GRANTS** John Doe's Motion for Entry of Judgment and Award of Benefits, Prejudgment Interest, Attorneys'

Fees, and Costs in the amounts noted above.

A separate Final Judgment shall issue in conformity with this Order.