# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1886
_____

M.B., by next friend Ericka Eggemeyer

*Plaintiff - Appellee*

E.S., by next friend A.S.; Z.S., by next friend S.H.

*Plaintiff*s

K.C., by next friend Kris Dadant; A.H., by next friend Kealey Williams

*Plaintiffs - Appellees*

v.

Jennifer Tidball, in her official capacity as Acting Director of the Missouri
Department of Social Services; Tim Decker, in his official capacity as Director of
the Children's Division

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City
_____

Submitted: April 13, 2021
Filed: November 16, 2021
_____

Before LOKEN, WOLLMAN, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

After the parties settled a lawsuit involving Missouri's foster-care system, the district court[1] awarded over $3 million in attorney fees and expenses to the plaintiffs. *See* 42 U.S.C. § 1988(b). We affirm.

I.

The plaintiffs, who sued on behalf of a group of foster children, alleged that Missouri did not have adequate procedures in place to guard against the overuse of psychotropic drugs. The plaintiffs alleged that the procedures were so inadequate, in fact, that they created a host of statutory and constitutional problems. *See* U.S. Const. amend. XIV; 42 U.S.C. §§ 621 *et seq.*, 670 *et seq.*; *see also* 42 U.S.C. § 1983. To remedy the situation, the plaintiffs sought injunctive and declaratory relief. Among the changes demanded were the creation of an updated medical-records system, development of an informed-consent policy, and the addition of a secondary-review system to identify and track "outlier" prescriptions.

The parties eventually settled, but not before sparring over a motion to dismiss, engaging in discovery, vigorously debating class certification, briefing and orally arguing an appeal, and participating in mediation. The settlement, which the parties reached nearly two years into the case, brought numerous changes to Missouri's foster-care system.

The defendants, who are a pair of state officials, agree that the settlement addressed "the issues raised in [the complaint]" and that the plaintiffs were the "prevailing parties." *See* 42 U.S.C. § 1988(b). Finding no reason to disagree, the district court approved the settlement and awarded the plaintiffs $3,253,651.25 in fees and another $132,907.56 in expenses. The award, which was approximately

---

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

16% under the overall request, reflected the work of four organizations, including two non-profit firms. The question on appeal is whether the court abused its discretion by refusing to reduce the award even more. *See Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

II.

Under "the bedrock principle known as the American Rule," litigants pay their own attorney fees, "win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010) (internal quotation marks omitted). Here, 42 U.S.C. § 1988(b) provides otherwise by allowing "[t]he [district] court, in its discretion," to award "a reasonable attorney[] fee" to "the prevailing party." The parties have already stipulated that the plaintiffs "prevail[ed]," so the only question for us is whether the award is reasonable. *See Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (recognizing that parties who settle can still "prevail[]"); *see also Maher v. Gagne*, 448 U.S. 122, 129 (1980) (same).

In calculating "a reasonable . . . fee," 42 U.S.C. § 1988(b), the district court used what has come to be known as the "lodestar." *See Hanig*, 415 F.3d at 825; *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (calling the lodestar "the guiding light of our fee-shifting jurisprudence" (quotation marks omitted)). The lodestar calculation is simple: it involves "multiplying the number of hours reasonably expended" on the case "by the reasonable hourly rates." *Hanig*, 415 F.3d at 825 (quotation marks omitted); *see also Perdue*, 559 U.S. at 551 (explaining that the lodestar is a "*rough*[] approximat[ion]" of what an attorney would charge a paying client).

The district court calculated "the number of hours reasonably expended" by deducting the time entries that reflected staffing inefficiencies or were too vague. *See Hanig*, 415 F.3d at 825. Using fee surveys and other evidence, it also reduced the hourly rates of over half of the 20 attorneys who worked on the case. Multiplying

the adjusted figures together yielded a lodestar of $3,253,651.25, just shy of the nearly $3.9 million that the plaintiffs had requested. *See id.*

A.

Although the defendants do not challenge any of these calculations directly, they believe that the district court improperly flipped the burden. In their view, rather than requiring the plaintiffs to prove that their own fee request was *reasonable*, as it should have, the court placed the burden on them to establish its *unreasonableness*. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (stating that it is the fee applicant's burden to "establish[] entitlement to an award"). We read the court's order differently.

From the start, the order made clear that the burden was on the plaintiffs. It was, according to the district court, *their* responsibility to support the hours claimed with documentary evidence and to "establish[] the appropriate rate." The court then evaluated the billing records, attorney-by-attorney, and disregarded any entries that were excessive or vague, leaving no doubt that the plaintiffs had failed to prove their entitlement to *all* the fees and expenses they had requested.

To be sure, the district court also explained why the defendants' rebuttal evidence did not measure up. It pointed out several flaws, including the absence of "declarations by local attorneys who deem[ed] [the] fees unreasonably high" and the lack of specific examples of attorneys who "spen[t] an inordinate amount of time" on tasks. But read in context, what the court was saying was that the defendants had not rebutted the "accuracy and reasonableness of [some of] the hours charged," *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1982), not that they had failed to meet some burden of their own. *See Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984) (concluding that the party opposing the fee request waived its right to challenge reasonableness by failing to submit evidence).

B.

As a fallback argument, the defendants urge us to reduce the award because, in their view, they have overcome the "'strong presumption' that the lodestar figure is reasonable." *Perdue*, 559 U.S. at 554. None of the considerations[2] they identify, however, clears this hurdle, *id.* at 553–54, much less convinces us that the district court abused its discretion in setting the fee award, *see Hanig*, 415 F.3d at 825.

1.

The first consideration raised by the defendants is the possibility that such a large award would result in a "windfall." *Perdue*, 559 U.S. at 559 n.8. For support, they point to the small operating budgets of the two non-profit firms that worked on the case: Children's Rights and National Center for Youth Law.

The Supreme Court has already foreclosed this argument. Over three decades ago, it explained that fees "are to be calculated according to the prevailing market rates in the relevant community," *Blum*, 465 U.S. at 895, not "the [actual] cost of providing legal services," *id.* at 892. It makes no difference, in other words, whether a "nonprofit legal services organization" is working on the case, as here, or high-priced "private counsel." *Id.* at 894. The rate is the same, regardless of whether some might view it as a "windfall." *Id.* at 895 (quotation marks omitted); *see id.* at

---

[2]Two considerations are not before us. The first—the alleged disparity in the size of the award compared to others in "similar cases"—was never supported with specific examples. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 719 (5th Cir. 1974) (considering this factor). The second—the allegedly limited success that the plaintiffs achieved—was never raised as a reason to reduce the award. *See id.* at 718 (explaining that "the results obtained" are a relevant consideration). If the district court failed to analyze these considerations in its otherwise thorough opinion, it is only because the defendants failed to discuss them. *See Hensley*, 461 U.S. at 437 (discussing the reasons to deviate from the lodestar "[w]hen an adjustment is *requested*" (emphasis added)).

895–96 ("The policy arguments advanced in favor of a cost-based standard should be addressed to Congress rather than to this Court.").

2.

The second consideration is the flip side of the first. The concern is that Missouri's taxpayers will end up footing the bill for what is, in the defendants' view, an excessive fee award.

Nothing, however, is unusual about this scenario. "[I]n *many* cases, attorney[] fees awarded under § 1988 . . . are paid in effect by state and local taxpayers," rather than "the individuals responsible for the constitutional or statutory violations." *Perdue*, 559 U.S. at 559 (emphasis added). We cannot say that the district court abused its discretion by declining to provide special treatment for a common situation. *See id.*

III.

We accordingly affirm the judgment of the district court.

_____