**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0679n.06

Nos. 10-1006/10-1190

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Sep 26, 2011*

LEONARD GREEN, Clerk

TIMOTHY O'CALLAGHAN, )
)
Plaintiff-Appellee Cross-Appellant, )
)
v. )
)
SPX CORPORATION, )
)
Defendant-Appellant Cross-Appellee. )
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

BEFORE: ROGERS and KETHLEDGE, Circuit Judges; and RUSSELL, Chief District Judge.[*]

ROGERS, Circuit Judge. Timothy O'Callaghan, a participant in SPX Corporation's long-term disability plan, sued his former employer after the company discontinued his disability benefits. The district court entered judgment on the administrative record for O'Callaghan, finding that the plan administrator's decision was arbitrary and capricious. Because there is insufficient indication that the plan administrator adequately considered O'Callaghan's objective evidence of disability, judgment on the administrative record was proper. However, O'Callaghan is not entitled to attorney's fees.

_____

[*]The Honorable Thomas B. Russell, United States Chief District Judge for the Western District of Kentucky, sitting by designation.

SPX maintains a long-term disability plan pursuant to the Employee Retirement Income Security Act of 1974 (ERISA). *See* 29 U.S.C. § 1001 *et seq*. The plan defines "disability" as follows:

> You are considered disabled under this Plan if, due to a non-work related illness or accidental injury, you are receiving appropriate care from a physician on a regular basis and
>
>> for the first 24 months from the onset of the disability, you are not able to earn 70% of your pre-disability earnings from your regular occupation in the local economy; or
>>
>> beyond 24 months, you are not able to earn 70% of your pre-disability earnings at any occupation for which you are reasonably qualified in the local economy.

R. 8 at 5. The plan limits disability benefits to 18 months for "neuromusculoskeletal or soft tissue disorder, unless there is some objective medical evidence of certain conditions." R. 8 at 8. The plan is organized as a Voluntary Employees' Beneficiary Association (VEBA), a form of trust that is funded entirely by employee contributions. SPX self-insures the trust in the event of a deficit in employee contributions.

O'Callaghan worked as a sales manager for SPX until January 2002. He had a history of lower back pain and had previously been diagnosed with a degenerative disc disease. After several spinal surgeries failed to relieve the pain, O'Callaghan in July 2002 applied for and began receiving long-term disability benefits under the company's ERISA plan. As a condition for receiving payments, SPX required O'Callaghan to apply for Social Security Disability Income (SSDI) benefits, which he was awarded in February 2004.

Shortly thereafter, O'Callaghan underwent another spinal surgery in October 2004. The results of this surgery were promising, and O'Callaghan's condition began to improve over the next year. By October 2005, O'Callaghan's treating physician, Dr. Bradley Ahlgren, noted that O'Callaghan was off all pain medication and was pleased with the outcome of his surgery.

The plan administrator reviewed O'Callaghan's claim in late 2006 and required him to submit to an independent medical examination. An electromyographic (EMG) exam administered in February 2007 did not reveal any objective neurological deficits, suggesting that O'Callaghan's condition had improved since his October 2004 surgery. The plan administrator also referred O'Callaghan to Dr. Bala Prasad for a physical examination. Dr. Prasad determined that O'Callaghan was subject to light (but permanent) functional restrictions due to his residual back pain, but concluded that O'Callaghan retained the functional capacity to return to work. Based on these findings and the absence of "objective medical evidence" of disability, the plan administrator denied continuation of long-term coverage in 2007.

O'Callaghan then appealed administratively. In his first-level appeal, O'Callaghan submitted Dr. Ahlgren's old treatment notes from October 2005, which did little to rebut Dr. Prasad's findings. Dr. Ahlgren's notes indicated that O'Callaghan had experienced "significant improvement" and was doing "much better than he had been doing preoperatively." R. 8 at 352. The plan administrator denied O'Callaghan's first-level appeal in January 2008, noting the absence of objective medical findings to support O'Callaghan's claim that he was disabled, and citing Dr. Ahlgren's statement that O'Callaghan was doing better.

In reality, it appears that O'Callaghan had taken a turn for the worse after October 2005. His second-level appeal was accompanied by the report of a rehabilitation specialist, Dr. James Stathakios, who physically examined O'Callaghan in February 2008 and administered an MRI scan and another EMG exam. The results of these tests indicated that O'Callaghan had been experiencing postoperative problems since his October 2004 surgery. The clinical tests came back as "abnormal" and showed postoperative changes including "disc bulging" and "nerve root irritation." From his physical examination, Dr. Stathakios concluded that O'Callaghan had a decreased range of motion in his spine, and decreased reflexes and sensation in his lower left leg. In addition to the new medical evidence, O'Callaghan submitted the report of a vocational consultant, which suggested that O'Callaghan's "difficulty with concentration" and "need to lie down or recline frequently throughout the day" would "preclude all work activity" and "would not be acceptable to any employer." O'Callaghan also cited his 2004 Social Security award—which had not been discontinued—as evidence of his disability.

The plan administrator referred the new medical evidence to another medical examiner, Dr. Philip Marion, for a file review. Dr. Marion was given copies of Dr. Stathakios's treatment notes and the subsequent MRI and EMG results, as well as Dr. Prasad's report and the initial EMG results. In a two-page opinion, Dr. Marion concluded that O'Callaghan was not disabled and that he was "functionally capable of performing sedentary capacity occupational activities." R. 8 at 449. SPX denied O'Callaghan's second-level appeal in August 2008, noting that its decision was based on information from O'Callaghan's treating physicians and the results of Dr. Prasad's examination. The

final benefits denial letter concluded that "[t]he objective clinical findings did not support Mr. O'Callaghan's claim to be disabled from <u>any</u> occupation." R. 8 at 367 (emphasis in original).

O'Callaghan filed this suit in state court in November 2008. After SPX removed the case to the federal district court below, the parties filed cross motions for judgment on the administrative record. The district court granted O'Callaghan's motion, finding that the plan administrator's decision was arbitrary and capricious, and gave three reasons for its decision. First, the court concluded that the plan administrator was acting under a conflict of interest because SPX retains potential liability under the plan and would be required to fund the plan in the event of a deficit in employee contributions. Second, the district court found that SPX had failed to address the favorable evidence O'Callaghan presented during his second-level appeal. The court reasoned that "Dr. Prasad's limited review did not include the objective tests and the narrative statements that O'Callaghan submitted during the appeals process," and that "Dr. Marion did not explain why he disagreed with Dr. Stathakios' interpretation of the objective medical tests and did not even acknowledge that there was a disagreement." R. 15 at 8. Third, the district court cited the plan administrator's failure to explain why it took a position different from that of the Social Security Administration regarding O'Callaghan's disability.

The district court declined to award O'Callaghan attorney's fees, reasoning that SPX had not acted in bad faith and its position was not frivolous. *O'Callaghan v. SPX Corp.*, No. 2:09-cv-10196, 2010 WL 259052, at *1 (E.D. Mich. Jan. 20, 2010). However, the court granted O'Callaghan's

request for prejudgment interest. *Id.* at \*2. SPX appeals the denial of its motion for judgment on the administrative record, and O'Callaghan cross-appeals the denial of attorney's fees.

The plan administrator's decision to deny continuation of long-term disability benefits was arbitrary and capricious because it was not the result of a "deliberate, principled reasoning process" and was not "supported by substantial evidence." *See Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006). There is no indication that either the plan administrator or its independent medical examiner, Dr. Marion, adequately considered the subsequent evidence of disability submitted in O'Callaghan's second-level administrative appeal.

Where, as here, an ERISA plan grants the plan administrator discretionary authority to determine benefit eligibility, benefit denials are reviewed under a deferential arbitrary-and-capricious standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Deferential though the standard may be, however, it is more than a "mere formality" or "rubber stamp." *See Glenn*, 461 F.3d at 666 (internal quotation marks omitted). The plan administrator's decision must be the result of a "deliberate, principled reasoning process" and must be "supported by substantial evidence." *Id.* (internal quotation marks omitted). In determining whether the plan administrator's decision passes muster under this standard, "we are required to review 'the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" *Id.* (quoting *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168 (6th Cir. 2003)). Application of this standard leads to the conclusion that SPX's decision to discontinue O'Callaghan's long-term disability benefits was arbitrary and capricious.

First, there is no indication from the record that either the plan administrator or its independent medical examiner, Dr. Marion, adequately considered O'Callaghan's objective medical evidence submitted after the initial denial of benefits. "[T]he failure to consider evidence that is offered after an initial denial of benefits renders a final denial of benefits arbitrary and capricious." *Glenn*, 461 F.3d at 672. Here, the new evidence includes (1) recent MRI and EMG results contradicting the results of tests performed by the plan administrator's first medical examiner, Dr. Prasad; (2) a statement from O'Callaghan's second treating physician, Dr. Stathakios, interpreting these results and opining that O'Callaghan is permanently disabled; and (3) the report of a vocational consultant suggesting that O'Callaghan's functional limitations would preclude all work activity. SPX's final benefits denial letter, informing O'Callaghan of the results of his second-level appeal, makes no mention of the new medical evidence, and there is no indication that the plan administrator otherwise considered it.

Instead, the administrative record reflects that Dr. Marion is the only person who ever reviewed O'Callaghan's objective evidence of disability. But Dr. Marion's two-page report gives no indication that he adequately considered this evidence. Although Dr. Marion noted the MRI report "demonstrating the patient's postsurgical degenerative lumbar spine changes," he did not explain why he discounted this evidence in favor of the results of Dr. Prasad's examination, undertaken more than a year earlier. Similarly, although Dr. Marion's report mentions the statement from Dr. Stathakios, the report does not explain why Dr. Marion discounted the opinion of O'Callaghan's treating physician. Generally speaking, a plan administrator "may not reject

summarily the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion." *Elliott v. Metropolitan Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006). Here, the plan administrator gave controlling weight to Dr. Marion's opinion—a non-treating, non-examining source—without any explanation and, as in *Elliott*, "for no apparent reason." We have held that benefit denials based on similarly perfunctory file reviews are arbitrary and capricious. *See Kalish v. Liberty Mutual*, 419 F.3d 501, 509-11 (6th Cir. 2005); *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 295-97 (6th Cir. 2005).

Contrary to SPX's argument, the district court did not misapply the arbitrary-and-capricious standard in reaching this conclusion. The court properly reviewed "the quantity and the quality of the medical evidence and the opinions on both sides of the issue," the requirement stated in *Glenn*, 461 F.3d at 666, and concluded that the final benefits denial was not supported by substantial evidence because the plan administrator failed to consider evidence submitted after the initial denial of benefits. SPX protests that the court should have deferred to the plan administrator's finding that the opinion of Dr. Marion was more credible than the opinions of O'Callaghan's treating physicians. But in light of the record as supplemented after the first-level appeal, Dr. Marion's two-page report is hardly "substantial evidence" on which to base a final denial of benefits. And without some explanation for why one side was credited over the other, there is no indication that the plan administrator's finding was the result of a "deliberate, principled reasoning process."

Second, the plan administrator failed to mention the Social Security Administration's contrary conclusion. The Administration found that O'Callaghan was permanently disabled despite

the fact that its definition of "permanently disabled" is more stringent than the definition of "disability" under the SPX plan. SSDI benefits are awarded only if the person's impairment is so severe that he or she "cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In contrast, a person may be considered "disabled" under the SPX plan if he or she is "not able to earn 70% of [his/her] pre-disability earnings at any occupation for which [s/he] is reasonably qualified in the local economy." R. 8 at 5. Despite the apparent anomaly of considering O'Callaghan disabled for Social Security purposes but not for purposes of SPX's plan, the final benefits denial letter completely ignores O'Callaghan's SSDI award.

This is especially troubling given that SPX required O'Callaghan to apply for Social Security benefits and indeed profited from his receipt of those payments, because the plan's long-term disability payments were offset to the extent of O'Callaghan's SSDI award. *See Bennett v. Kemper National Services, Inc.*, 514 F.3d 547, 554 (6th Cir. 2008). SPX counters that there was good reason to discount the SSDI award because it was "stale." *See Cox v. Standard Life Ins. Co.*, 585 F.3d 295, 303 (6th Cir. 2009). O'Callaghan was awarded SSDI benefits in February 2004, several months before his October 2004 surgery, which at least temporarily improved his condition, and the Social Security Administration did not review its award for another three years. Thus, at the time the plan administrator reviewed O'Callaghan's claim in late 2006, the SSDI award may not have accurately reflected O'Callaghan's functional capacity.

It is true that the Social Security award would be more relevant, and the failure to mention it even more troubling, if the plan administrator had conducted its review in late 2004, shortly after the SSDI award and before O'Callaghan underwent surgery. Nevertheless, the failure to mention and rebut the SSDI award, like the failure to adequately consider O'Callaghan's objective medical evidence, is a factor that weighs in favor of finding that the plan administrator's decision was arbitrary and capricious. *See Bennett*, 514 F.3d at 553-54.

We do not, however, rely on the third basis for the district court's ruling—the presence of a conflict of interest. Whether SPX was acting under a conflict of interest is questionable. SPX does not have an "immediate financial interest," like that in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008), in the payment of benefits because it does not pay benefits from its general assets and does not fund the trust from which benefits are paid. Instead, SPX's ERISA plan is funded entirely by employee contributions. There is no evidence that SPX has ever had to make a stop-loss contribution to the plan. Indeed, there is no evidence that any conflict of interest actually influenced the plan administrator's decision at all. Thus, even if there was a structural conflict of interest (and we have our doubts about this), its effect on the plan administrator's decision was negligible.

With respect to O'Callaghan's cross appeal, the district court did not abuse its discretion in denying O'Callaghan's motion for attorney's fees. Under ERISA, a "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). We review a district court's decision to deny attorney's fees for abuse of discretion.

The district court considered the following factors in denying O'Callaghan's motion for attorney's fees:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*O'Callaghan*, 2010 WL 259052, *1 (quoting *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 936 (6th Cir. 2000)). The parties agree that this was the correct standard to apply.

The district court made findings on each of these factors. The court found that SPX had not "acted with a high degree of culpability or bad faith"; that its ability to satisfy an award of attorney's fees was uncontested; that awarding attorney's fees would not have a deterrent effect because there was nothing in the record to indicate deliberate misconduct; that O'Callaghan had not sought to confer a common benefit on all participants and beneficiaries of the ERISA plan or to resolve significant legal questions regarding ERISA; and that both parties' positions had merit. *Id.* at *1-*2. All of these factors—except for the ability to pay—weigh against an award of attorney's fees.

O'Callaghan provides no good reason to second-guess these factual findings. O'Callaghan argues that he "conclusively established" the first, second, and fifth factors—SPX's culpability or bad faith, ability to pay, and the merits of the parties' positions, respectively. But the district court carefully considered whether the plan administrator acted in bad faith, despite finding that its decision was arbitrary and capricious. *O'Callaghan*, 2010 WL 259053, at *1. Although the district

court properly decided that the plan administrator's decision was arbitrary and capricious, and even if this court might take a different view of whether the plan administrator acted in bad faith, the district court's contrary conclusion was not an abuse of discretion. *See id.*

The same reasoning applies to O'Callaghan's argument that the merits of the parties' positions favored his request for attorney's fees. In disposing of the fifth factor, the district court found that "[b]oth parties proffered positions that had merit. Although defendant's position was not sufficiently persuasive on the merits of this case, it certainly was not frivolous." *Id.* Again, even though the district court's judgment on the administrative record was proper, it was a close call for O'Callaghan under the arbitrary and capricious standard. The district court's finding that this factor also weighed against an award of attorney's fees was not an abuse of discretion.

The Supreme Court's subsequent decision in *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2156 (2010), does not change matters. *Hardt* clarified that a fee claimant need not be a "prevailing party" to be eligible for attorney's fees under ERISA's fee-shifting statute. Eligibility for attorney's fees requires merely that the claimant have achieved "some degree of success on the merits." *Id.* at 2158. But *Hardt* does not change the district court's five-factor analysis. *Hardt* merely relaxes the threshold for eligibility for attorney's fees—from "prevailing party" to "some degree of success on the merits." *Id.* at 2156. Even under this more relaxed threshold for eligibility, O'Callaghan must still demonstrate his entitlement to attorney's fees under 29 U.S.C. § 1132(g)(2). The district court's conclusion that he has not done so was not an abuse of discretion.

The judgment of the district court is affirmed.