NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0333n.06

No. 12-1859

FILED
*Apr 04, 2013*
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

TAMARA CIARAMITARO,

     Plaintiff-Appellant,

v.

UNUM LIFE INSURANCE COMPANY OF
AMERICA; GREEKTOWN CASINO, LLC,

     Defendants-Appellees.

————————————————————/

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    MERRITT, MARTIN, and CLAY, Circuit Judges.

    **CLAY, Circuit Judge.**  Plaintiff Tamara Ciaramitaro sued her employer, Defendant

Greektown Casino, and the benefits administrator of her long-term disability plan, Defendant Unum

Life Insurance, for benefits that she claimed that she was owed under the ERISA-covered long-term

disability plan.  After initially remanding Plaintiff's claim to Unum, the district court affirmed

Plaintiff's benefits award, which had been offset for benefits that Plaintiff had received through

workers' compensation and Social Security.  The district court also awarded Plaintiff $5000 in

attorney's fees.  For the following reasons, we **VACATE and REMAND** the district court's

attorney fee award but **AFFIRM** the judgment in all other respects.

**BACKGROUND**

Plaintiff Tamara Ciaramitaro worked for Defendant Greektown Casino, LLC ("Greektown") as a floor person. In that capacity, she filled slot machines with coins and made minor repairs to slot machines. On October 26, 2001, Plaintiff fainted while at work and sustained a closed-head injury. Plaintiff was taken to the hospital for this injury and after being treated for several hours, was returned to work. Upon returning to work after her hospital visit, however, Plaintiff was sent home after working for another half-hour. For the next three weeks, Plaintiff was put on "light duty," and then on November 12, 2001, she returned to "full duty." Plaintiff remained working on "full duty" until January 5, 2003, when she developed lumbar problems, which manifested as back pain as well as numbness/tingling in her left leg. Sometime after 2003, Plaintiff was diagnosed with brain injuries stemming from her fainting episode in October 2001.

Greektown provides its employees with a long-term disability plan ("the Plan"), which is operated by Defendant Unum Life Insurance Company of America ("Unum"). Under the Plan, which is covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, "disability" is defined as when a participant is "limited from performing the material and substantial duties of [her] regular occupation due to [her] sickness or injury . . . ." (R. 29-2, at PID# 137.) Though Greektown was the plan administrator, benefits determinations were made by Unum, which is vested with the "discretionary authority to determine [a participant's] eligibility for benefits and to interpret the terms and provisions of [the Plan]." (*Id.* at 117.) Both the initial claim and appeals processes run through Unum. The Plan specifies that any award from the Plan will be decreased by "any deductible sources of income," which include "income received under a 'worker's compensation law' and under the United States Social Security Act." (*Id.* at 138, 140.) The Plan

2

qualifies these outside-payment deductions and states that "Unum will only subtract deductible sources of income which are payable as a result of the same disability." (*Id.* at 141.)

Based on her lumbar problems, Plaintiff, in 2003, applied for benefits under the Plan, which Unum denied on September 26, 2003. Plaintiff took an intra-Plan appeal of that decision, and Unum upheld its denial of benefits decision on August 25, 2004. Thereafter, Plaintiff brought suit in the United States District Court for the Eastern District of Michigan (No. 05-cv-70813). That suit was dismissed without prejudice. Following the dismissal, Plaintiff was awarded Michigan workers' compensation benefits for her lumbar problems in March 2006, and Social Security Disability Insurance ("SSDI") benefits for her brain injuries in January 2007.

Plaintiff filed the underlying action in the United States District Court for the Eastern District of Michigan, claiming that the Plan wrongfully denied her benefits, on September 4, 2009. Unum moved to dismiss Plaintiff's state-law claims, and that motion was granted on November 6, 2009. *See Ciaramitaro v. Unum Life Ins. Co. of Am.*, No. 09-cv-13492, 2009 WL 3757046 (E.D. Mich. Nov. 6, 2009). On July 27, 2010, Greektown moved to dismiss all claims against it. That motion was granted on February 3, 2012. *Ciaramitaro v. Unum Life Ins.*, No. 09-cv-13492, 2012 WL 368373, at *1 n.1 (E.D. Mich. Feb. 3, 2012). Thereafter, all that remained were the federal ERISA claims against Unum.

On June 16, 2010, the district court entered an order requiring Unum to produce the administrative record and allowing Plaintiff, if she so chose, to supplement that record. Plaintiff, on July 9, 2010, supplemented the record with, among other things, decisions granting her Michigan workers' compensation benefits and SSDI. After this supplement, the parties agreed to remand the matter to Unum for a reconsideration of benefits on September 9, 2010.

3

On March 31, 2011, Unum's counsel notified Plaintiff's counsel that Plaintiff was entitled to benefits under the Plan. The award of $36,213.72 was communicated to Plaintiff in an April 13, 2011 letter. That letter noted that her award had been offset by her worker's compensation and SSDI awards. Plaintiff then filed a motion seeking to have Unum recalculate her benefits and explain the amount that Unum deemed that Plaintiff was entitled to, in light of the offsets applied by Unum in its award. The district court, on July 26, 2011, granted Plaintiff's motion in part and ordered Unum to provide Plaintiff with an explanation of the award as well as the basis for the offsets. In response, on August 23, 2011, Unum explained that Plaintiff was "disabled, either separately or in combination, from a lumbar disorder and a mental disorder." (R. 47-2, at PID# 443.) This conclusion was based on the additional evidence submitted by Plaintiff on remand to the Plan. As to the offsets, Plaintiff was entitled to an award of $161,576.50, which was, in relevant part, offset by $35,082.79 based on Plaintiff's SSDI award and by $106,280.53 based on her worker's compensation award.

Plaintiff continued to challenge the calculation after the explanation, and the district court took up the challenge in its February 3, 2012 order. In that order, the district court denied Plaintiff's request for recalculation, civil penalties, prejudgment interest, and punitive damages. *See Ciaramitaro*, 2012 WL 368373. Plaintiff next moved for attorney's fees and for reconsideration. The district court denied reconsideration, but granted Plaintiff's attorney $5000 in fees (though Plaintiff's attorney requested $49,811.20 in fees). *See Ciaramitaro v. Unum Life Ins. Co. of Am.*, No. 09-cv-13492, 2012 WL 2048215 (E.D. Mich. June 6, 2012). This timely appeal followed.

## DISCUSSION

### I.       Calculation of Plaintiff's Benefits under the Plan

Plaintiff argues that Unum failed to give an adequately determinate basis for her award. She contends that describing her disability as deriving "either separately or in combination, from a lumbar disorder and a mental disorder" inappropriately allowed Unum to offset her Plan award both for worker's compensation (which was awarded for her lumbar problems) and for SSDI (which was awarded for her brain injuries). Plaintiff argues that this violates the Plan's statement that "Unum will only subtract deductible sources of income which are payable as a result of the same disability," which Plaintiff reads as mandating that the other income be paid due to the same condition. Unum counters that "same disability" in this context means same period for which you were unable to work, not the same condition.

Where a party (here, Unum) is given discretion in interpreting the Plan, we will "overturn [such a party's] interpretation only if it is arbitrary or capricious." *Fallin v. Commonwealth Indus., Inc.*, 695 F.3d 512, 516 (6th Cir. 2012). Under arbitrary-and-capricious review, we must uphold an interpretation of the Plan's terms so long as it is reasonable. *Price v. Bd. of Trs. of Ind. Laborer's Pension Fund*, 632 F.32 288, 297 (6th Cir. 2011).

Plaintiff reads Unum's explanation of her disability as determining that she was disabled because of her lumbar injury and/or her head injury—i.e., not necessarily acknowledging that either one is a qualifying disability. From there, Plaintiff contends that Unum was really awarding Plaintiff benefits for her brain injury because Unum had previously denied Plaintiff benefits on her lumbar

claim and no new evidence was entered as to her lumbar problems on remand.[1] The more natural reading of Unum's explanation, however, is that Unum determined that *both* her lumbar problems *and* brain injury are sufficiently debilitating so as to warrant an award under the Plan as they "separately" would each make her disabled, but may be even more debilitating "in combination."

Such a determination is akin to the one that the Fifth Circuit dealt with in *Sanders v. Unum Life Insurance Co. of America*, 553 F.3d 922 (5th Cir. 2008). The beneficiary in *Sanders* claimed that "Unum should not have deducted his SSDI benefits because . . . Unum's benefits were only payable as a result of his physical disability, while the SSDI payments were payable as a result of his mental disability." *Id*. at 925. The Fifth Circuit found the SSDI offset to be proper because "[e]ven if the SSDI payments only applied to Sanders' mental disability, Unum had always based its payments to Sanders on *both* mental and physical impairments." *Id*. at 925–26 (emphasis added); *see also Bacquie v. Liberty Mut. Ins. Co.*, 435 F. Supp. 2d 318, 323–34 (S.D.N.Y. 2006) (concluding an SSDI award for schizophrenia was proper where ERISA benefits were awarded based on "co-morbid (physical and psychiatric) medical conditions"), *aff'd*, 247 F. App'x 296 (2d Cir. 2007).

---

[1] This claim is belied by the record. There was additional evidence submitted to Unum about Plaintiff's lumbar problems that it could have considered on remand—specifically, Dr. Christopher Sweet's diagnosis of a herniated disc from November 3, 2004. Plaintiff argues that because Sweet's report confirmed an earlier diagnosis by Dr. Laren Lerner, which Unum had when it first rejected Plaintiff's claim, Unum could not rely on Sweet's report when it reconsidered her benefits. Aside from providing no authority for this proposition, where additional evidence is submitted to the plan, especially evidence as compelling as a confirmation of a diagnosis, ERISA ought to encourage plans to reevaluate their previous decisions, not bind themselves to them. *Cf. Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 373 (6th Cir. 2009) ("Remand [to the plan] therefore is appropriate in a variety of circumstances, particularly where . . . the administrative record is factually incomplete.").

As in *Sanders*, Unum awarded benefits to Plaintiff based on both her lumbar problems and brain injuries. Therefore, the awards from workers' compensation (for her lumbar problems) and SSDI (for her brain injuries) were reasonable offsets under the terms of the Plan.

## II.    Prejudgment Interest & Civil Penalties

Plaintiff next contends that the district court erred in refusing to grant her prejudgment interest on her benefits award. We review the district court's decision regarding an award of prejudgment interest for an abuse of discretion. *Shelby Cnty. Health Care*, 581 F.3d at 376. "An award of prejudgment interest in the ERISA context is compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award." *Id*. (internal quotation marks omitted). A court need only find that benefits were "incorrectly withheld." *Garber v. Provident Life & Accident Ins. Co.*, 181 F.3d 100, 1999 WL 357812, at *6 (6th Cir. 1999) (table decision) (citing *Wells v. U.S. Steel*, 76 F.3d 731, 737 (6th Cir. 1996)) (emphasis omitted).

Because there is no right to prejudgment interest under ERISA, it is the Plaintiff's burden to show that the funds were incorrectly withheld by Unum. In denying prejudgment interest to Plaintiff, the district court discussed the evolving nature of Plaintiff's claims from her initial lumbar-only claim in 2003 through the multiple federal filings and supplements to the administrative record and found no basis to conclude that Unum wrongfully withheld Plaintiff's benefits. *See Ciaramitaro*, 2012 WL 368373, at *3. Although the district court initially commented that "there was no evidence that Unum acted in bad faith," *id*. at *2, an incorrect statement of what Plaintiff was required to prove, *see Garber*, 181 F.3d 100, at *6, the district court clarified that it determined that prejudgment interest was not due because Plaintiff had not shown any wrongful withholding by Unum.

7

*Ciaramitaro*, 2012 WL 2048215, at *5 (citing *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 253 (6th Cir. 1992)). We can find no abuse of discretion where, as in this case, the district court articulates a clear, substantiated reason for denying benefits and Plaintiff has introduced no further evidence or argument as to how the benefits were incorrectly withheld.

Plaintiff further contends that the district court erred in refusing to award her civil penalties under 29 U.S.C. § 1132(c). As with prejudgment interest, there is no right of civil penalties under ERISA, and we review a district court's denial of them for an abuse of discretion. *Zirnhelt v. Mich. Consol. Gas Co.*, 526 F.3d 282, 290 (6th Cir. 2008). Section 1132(c) provides courts the ability to award penalties of between $100–$1000 per day for various cross-referenced violations of ERISA. Most of these violations deal with a plan's failure to provide participants with notice of various events. *See, e.g.*, 29 U.S.C. §§ 1021(e)(1), 1166 (cross-referenced in 29 U.S.C. § 1132(c)(1)), 29 U.S.C. § 1021(j)–(l) (cross-referenced in 29 U.S.C. § 1132(c)(4)).

Plaintiff claims no less than eight "egregious acts" by Unum that she feels amount to violations but fails to tie any of them to the cross-referenced sections in § 1132(c) that would give rise to a civil penalty under ERISA. For example, Plaintiff argues that it was arbitrary and capricious of Unum not to perform an independent medical examination. But such an argument is illogical as it makes no sense to penalize an ERISA plan for failing to conduct such an examination when it *awards* benefits if it is not required for a plan to *deny* benefits without such an examination. *See Calvert v. Firstar Fin. Inc.*, 409 F.3d 286, 295 (6th Cir. 2005). Overall, Plaintiff has made a number of allegations, which are either disingenuous or do not give rise to penalties under ERISA. She has done so in a fairly perfunctory fashion, *see United States v. Stewart*, 628 F.3d 246, 256 (6th Cir.

2010) ("Issues adverted to in a perfunctory manner . . . are deemed waived." (internal quotation marks omitted)), and has provided nothing to show that the district court abused its discretion in declining to impose civil penalties on Unum, *see Zirnhelt*, 526 F.3d at 290.

## III.   Attorney's Fees

Plaintiff's attorney requested $49,811.20 in fees and costs for the 256.5 hours he worked on the litigation; the district court awarded him $5000. *Ciaramitaro*, 2012 WL 2048215, at *3. We review a district court's award of attorney's fees and costs in an ERISA action for an abuse of discretion. *Shelby Cnty. Health Care*, 581 F.3d at 376. "An abuse of discretion exists only when the court has the definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Id*. (alterations and internal quotation marks omitted); *see also Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 424 (6th Cir. 2012) ("Generally, finding an abuse of discretion would require the lower court ignoring the criteria set by the Sixth Circuit or otherwise a certainty on this Court's part that a clear error in judgment was committed." (alterations and internal quotation marks omitted)).

As a threshold matter, Plaintiff claims that the Supreme Court's 2010 decision in *Hardt v. Reliance Standard Life Insurance Co.*, __ U.S. __, 130 S. Ct. 2149 (2010), displaced this Court's five-factor test from *Secretary of Labor v. King*, 775 F.2d 666 (6th Cir. 1985), for determining whether fees are appropriate in an ERISA case.[2] In *Hardt*, the Supreme Court clarified who may be

---

[2] The five factors are:

(1) the degree of the opposing party's culpability or bad faith;
(2) the opposing party's ability to satisfy an award of attorney's fees;
(3) the deterrent effect of an award on other persons under similar circumstances;

entitled to attorney's fees in ERISA actions. It held that a party need not be a typical "prevailing party" to be eligible for fees but must only achieve "some degree of success on the merits." *Hardt*, 130 S. Ct. at 2157–58. Plaintiff claims that in addition to that threshold clarification, the Supreme Court disclaimed the Fourth Circuit's five-factor test. This Court recently addressed this argument in *O'Callaghan v. SPX Corp.*, 442 F. App'x 180 (6th Cir. 2011). In *O'Callaghan*, we wrote:

> *Hardt* does not change the district court's five-factor analysis. *Hardt* merely relaxes the threshold for eligibility for attorney's fees—from "prevailing party" to "some degree of success on the merits." Even under this more relaxed threshold for eligibility, O'Callaghan must still demonstrate his entitlement to attorney's fees under 29 U.S.C. § 1132(g)(2).

*Id*. at 186 (citation omitted).

This is squarely in accord with *Hardt*, where the Court noted, "We do not foreclose the possibility that once a claimant has [met the 'some degree of success on the merits' threshold], and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors adopted by the Court of Appeals, in deciding whether to award attorney's fees." 130 S. Ct. at 2158 n.8. Therefore, while the five-factor *King* test is not required, it still has vitality in helping courts determine whether or not to award fees to a party that achieves some degree of success on the merits. *O'Callaghan*, 442 F. App'x at 186; *see also First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005) (The *King* factors "are not statutory and therefore not dispositive. Rather, they are simply

---

(4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and
(5) the relative merits of the parties' positions.

*King*, 775 F.2d at 669.

considerations representing a flexible approach."); *cf. Pemberton v. Reliance Standard Life Ins. Co.*, No. 08-cv-86, 2011 WL 882835, at *3 (E.D. Ky. Mar. 10, 2011) (declining to apply the *King* factors "because they would have no effect on the analysis" in that case).

It is clear that Plaintiff meets *Hardt*'s threshold that to be eligible for fees, a party needs to have obtained some degree of success on the merits, *see Hardt*, 130 S. Ct. at 2158, and the district court determined that Plaintiff was entitled to fees based on its application of the *King* factors, *Ciaramitaro*, 2012 WL 2048215, at *2–3. Neither *King* nor *Hardt*, however, bears on the question before us, which is whether the district court's award of $5000 was reasonable. Specifically, Plaintiff faults the district court for failing to discuss its rationale and methodology in coming to the conclusion that $5000 was an appropriate award.

All we have from the district court on this point is that "the first, second and third *King* factors favor a limited award of attorney's fees" and the award of $5000. *See Ciaramitaro*, 2012 WL 2048215, at *3. Such a lack of analysis is reminiscent of the situation faced by this Court in *McMurtry v. Paul Revere Life Ins. Co.*, 225 F.3d 659, 2000 WL 799342 (6th Cir. 2000) (table decision). In that ERISA case, we remanded because "a discussion of the methodology used, if any, to calculate the award is entirely absent from the district court's opinion." *Id* at *7. "Reasonable attorney's fee awards are determined by the fee applicant's 'lodestar,' calculated by multiplying the proven number of hours worked by a court-ascertained reasonable hourly rate." *Ellison v. Balinski*, 625 F.3d 953, 960 (6th Cir. 2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Iron Workers' Local No. 25 Pension Fund v. MCS Gen. Contractors, Inc.*, 229 F.3d 1152, 2000 WL 127683, at *8 (6th Cir. 2000) (table decision) (discussing, in an ERISA case, the propriety of a lodestar calculation once a fee award is deemed appropriate). Unum makes a number of arguments

11

about why various hours should not have been awarded, but from the district court's opinion, it is impossible to tell if it credited any of them.

There is no lodestar calculation or any explanation at all for how the district court, once it determined that Plaintiff was entitled to fees, came up with the $5000 amount. Therefore, in order to allow for meaningful appellate review, we vacate the district court's attorney's fee award and remand for the district court to reconsider or further explain its conclusion. *McMurtry,* 225 F.3d 659, at *7; *cf. Drennan*, 977 F.2d at 254 ("Since the court failed to indicate why it applied a multiplier of two to the lodestar amount and why it set aside the private fee contracts between the Class and the attorneys, the fee award is reversed and remanded for a statement of detailed factual findings.").

## IV.     Dismissal of Claims against Greektown

Lastly, Plaintiff claims that it was error for the district court to have dismissed all of its claims against Greektown. We review a ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, such as this one, de novo. *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012). "Following *Twombly* and *Iqbal*, it is well settled that 'a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Ctr. for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (in turn quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Iqbal*, 556 U.S. at 678).

The district court dismissed Greektown, citing *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988), because Greektown's "sole involvement in this matter is that it sponsored the Plan which insured plaintiff . . . [and did not] ha[ve] any involvement in the decision to deny her claim for benefits." *Ciaramitaro*, 2012 WL 368373, at *1 n.1. In *Daniel*, this Court held that "[u]nless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits." 839 F.2d at 266. In *Moore v. Lafayette Life Insurance Co.*, 458 F.3d 416 (6th Cir.2006), we elaborated on the *Daniel* rule:

> When an insurance company administers claims for employee welfare benefit plans and has authority to grant or deny claims, the insurance company is a "fiduciary" for ERISA purposes. . . . [Conversely, a]n employer who does not control or influence the decision to deny benefits is not the fiduciary with respect to denial of benefit claims.

*Id*. at 438 (citations omitted). The *Moore* court therefore concluded that although the employer was called the "plan administrator," the termination decision was made by the insurer as the "claims administrator" and therefore affirmed the district court's dismissal of the employer. *Id*.; *accord Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 848 (6th Cir. 2007).

Plaintiff contends that because Greektown had the ability to "amend" or "modify" the Plan "at anytime," Greektown was in control of the Plan and thus a proper party. (*See* R. 29, at PID# 152–53.) This language does not, however, change the analysis as to whether Greektown was a proper party. The question is whether Greektown played any role in controlling or influencing Plaintiff's benefits decision. In this case, there was no way under the Plan for Greektown to have done that as Unum (not Greektown) was vested with "discretionary authority to determine [a participant's] eligibility for benefits." (*Id*. at 117.) Plaintiff's conclusory assertions without any factual support that Greektown "instructed" or "influenced" Unum to deny Plaintiff her benefits are

insufficient to survive a motion to dismiss.[3]  *Ctr. for Bio-Ethical Reform*, 648 F.3d at 369.

Therefore, we find that the district court did not err in dismissing Plaintiff's claims against

Greektown.

## CONCLUSION

For the foregoing reasons, we **VACATE and REMAND** the district court's attorney fee

award but **AFFIRM** the judgment in all other respects.

---

[3]  Plaintiff also argues that the district court inappropriately denied her an opportunity to respond to Greektown's motion to dismiss.  That motion was filed on July 27, 2010.  Pursuant to the Eastern District of Michigan's rules, Plaintiff had twenty-one days to respond to that motion (August 17, 2010), which she did not avail herself of.  *See* E.D. Mich. Local R. 7.1(e)(1)(B).  The district court then entered a stay on September 9, 2010.  After the stay was lifted at Plaintiff's request on June 23, 2011, Greektown's unresponded-to motion was once again pending, and on February 3, 2012, the district court granted Greektown's motion.  Plaintiff claims that after the stay, Greektown should have had to "reinstate" its motion to dismiss.  Because Plaintiff initially missed the deadline to respond and then was given another six months after the stay was lifted in which to do so, we see no basis for Plaintiff's claim that the district court's dismissal of Greektown was procedurally improper.