(Slip Opinion) OCTOBER TERM, 2014 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BAKER BOTTS L.L.P. ET AL. *v.* ASARCO LLC

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 14–103.   Argued February 25, 2015—Decided June 15, 2015

Respondent ASARCO LLC hired petitioner law firms pursuant to §327(a) of the Bankruptcy Code to assist it in carrying out its duties as a Chapter 11 debtor in possession.  See 11 U. S. C. §327(a).  When ASARCO emerged from bankruptcy, the law firms filed fee applications requesting fees under §330(a)(1), which permits bankruptcy courts to "award . . . reasonable compensation for actual, necessary services rendered by" §327(a) professionals.  ASARCO challenged the applications, but the Bankruptcy Court rejected ASARCO's objections and awarded the law firms fees for time spent defending the applications.  ASARCO appealed to the District Court, which held that the law firms could be awarded fees for defending their fee applications.  The Fifth Circuit reversed, holding that §330(a)(1) did not authorize fee awards for defending fee applications.

*Held*: Section §330(a)(1) does not permit bankruptcy courts to award fees to §327(a) professionals for defending fee applications.  Pp. 3–13.

   (a) The American Rule provides the "'basic point of reference'" for awards of attorney's fees: "'Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.'"  *Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U. S. 242, 252–253.  Because the rule is deeply rooted in the common law, see, *e.g., Arcambel* v. *Wiseman*, 3 Dall. 306, this Court will not deviate from it "'absent explicit statutory authority,'" *Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health and Human Resources*, 532 U. S. 598, 602.  Departures from the American Rule have been recognized only in "specific and explicit provisions," *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240, 260, usually containing language that authorizes the award of "a reasonable attorney's fee," "fees," or "litigation costs," and referring to a "prevailing party" in the context

of an adversarial "action," see generally *Hardt, supra,* at 253, and nn. 3–7. Pp. 3–4.

  (b) Congress did not depart from the American Rule in §330(a)(1) for fee-defense litigation. Section 327(a) professionals are hired to serve an estate's administrator for the benefit of the estate, and §330(a)(1) authorizes "reasonable compensation for actual, necessary services rendered." The word "services" ordinarily refers to "labor performed for another," Webster's New International Dictionary 2288. Thus, the phrase " 'reasonable compensation for services rendered' necessarily implies loyal and disinterested service in the interest of" a client, *Woods* v. *City Nat. Bank & Trust Co. of Chicago,* 312 U. S. 262, 268. Time spent litigating a fee application against the bankruptcy estate's administrator cannot be fairly described as "labor performed for"—let alone "disinterested service to"—that administrator. Had Congress wished to shift the burdens of fee-defense litigation under §330(a)(1), it could have done so, as it has done in other Bankruptcy Code provisions, *e.g.,* §110(i)(1)(C). Pp. 4–7.

  (c) Neither the law firms nor the United States, as *amicus curiae,* offers a persuasive theory for why §330(a)(1) should override the American Rule in this context. Pp. 7–13.

    (1) The law firms' view—that fee-defense litigation is part of the "services rendered" to the estate administrator—not only suffers from an unnatural interpretation of the term "services rendered," but would require a particularly unusual deviation from the American Rule, as it would permit attorneys to be awarded fees for unsuccessfully defending fee applications when most fee-shifting provisions permit awards only to "a 'prevailing party,'" *Hardt, supra,* at 253. Pp. 7–8.

    (2) The Government's argument is also unpersuasive. Its theory—that fees for fee-defense litigation must be understood as a component of the "reasonable compensation for [the underlying] services rendered" so that compensation for the "actual . . . services rendered" will not be diluted by unpaid time spent litigating fees—cannot be reconciled with the relevant text. Section 330(a)(1) does not authorize courts to award "reasonable compensation," but "reasonable compensation for *actual, necessary services rendered,*" and the Government properly concedes that litigation in defense of a fee application is not a "service." And §330(a)(6), which presupposes compensation "for the preparation of a fee application," does not suggest that time spent defending a fee application must also be compensable. *Commissioner* v. *Jean,* 496 U. S. 154, distinguished.

  The Government's theory ultimately rests on the flawed policy argument that a "judicial exception" is needed to compensate fee-defense litigation and safeguard Congress' aim of ensuring that tal-

ented attorneys take on bankruptcy work. But since no attorneys are entitled to such fees absent express statutory authorization, requiring bankruptcy attorneys to bear the costs of their fee-defense litigation under §330(a)(1) creates no disincentive to bankruptcy practice. And even if this Court believed that uncompensated fee-defense litigation would fall particularly hard on the bankruptcy bar, it has no "roving authority . . . to allow counsel fees . . . whenever [it] might deem them warranted," *Alyeska Pipeline, supra,* at 260. Pp. 8–13.

751 F. 3d 291, affirmed.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, and ALITO, JJ., joined, and in which SOTOMAYOR, J., joined as to all but Part III–B–2. SOTOMAYOR, J., filed an opinion concurring in part and concurring in the judgment. BREYER, J., filed a dissenting opinion, in which GINSBURG and KAGAN, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

### No. 14–103

### BAKER BOTTS L.L.P. ET AL., PETITIONERS *v.* ASARCO LLC

#### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

#### [June 15, 2015]

JUSTICE THOMAS delivered the opinion of the Court.

Section 327(a) of the Bankruptcy Code allows bank-ruptcy trustees to hire attorneys, accountants, and other professionals to assist them in carrying out their statutory duties. 11 U. S. C. §327(a). Another provision, §330(a)(1), states that a bankruptcy court "may award . . . reasonable compensation for actual, necessary services rendered by" those professionals. The question before us is whether §330(a)(1) permits a bankruptcy court to award attorney's fees for work performed in defending a fee application in court. We hold that it does not and therefore affirm the judgment of the Court of Appeals.

I

In 2005, respondent ASARCO LLC, a copper mining, smelting, and refining company, found itself in financial trouble. Faced with falling copper prices, debt, cash flow deficiencies, environmental liabilities, and a striking work force, ASARCO filed for Chapter 11 bankruptcy. As in many Chapter 11 bankruptcies, no trustee was appointed and ASARCO—the "'debtor in possession'"—administered the bankruptcy estate as a fiduciary for the estate's credi-

tors. §§1101(1), 1107(a).

Relying on §327(a) of the Bankruptcy Code, which permits trustees to employ attorneys and other professionals to assist them in their duties, ASARCO obtained the Bankruptcy Court's permission to hire two law firms, petitioners Baker Botts L.L.P. and Jordan, Hyden, Womble, Culbreth & Holzer, P.C., to provide legal representation during the bankruptcy.[1]  Among other services, the firms prosecuted fraudulent-transfer claims against ASARCO's parent company and ultimately obtained a judgment against it worth between $7 and $10 billion. This judgment contributed to a successful reorganization in which all of ASARCO's creditors were paid in full.  After over four years in bankruptcy, ASARCO emerged in 2009 with $1.4 billion in cash, little debt, and resolution of its environmental liabilities.

The law firms sought compensation under §330(a)(1), which provides that a bankruptcy court "may award . . . reasonable compensation for actual, necessary services rendered by" professionals hired under §327(a).  As required by the bankruptcy rules, the two firms filed fee applications.  Fed. Rule Bkrtcy. Proc. 2016(a).  ASARCO, controlled once again by its parent company, challenged the compensation requested in the applications.  After extensive discovery and a 6-day trial on fees, the Bankruptcy Court rejected ASARCO's objections and awarded the firms approximately $120 million for their work in the bankruptcy proceeding plus a $4.1 million enhancement for exceptional performance.  The court also awarded the firms over $5 million for time spent litigating in defense of their fee applications.

––––––––––

[1] Although §327(a) directly applies only to trustees, §1107(a) gives Chapter 11 debtors in possession the same authority as trustees to retain §327(a) professionals.  For the sake of simplicity, we refer to §327(a) alone throughout this opinion.

ASARCO appealed various aspects of the award to the District Court. As relevant here, the court held that the firms could recover fees for defending their fee application.

The Court of Appeals for the Fifth Circuit reversed. It reasoned that the American Rule—the rule that each side must pay its own attorney's fees—"applies absent explicit statutory . . . authority" to the contrary and that "the Code contains no statutory provision for the recovery of attorney fees for *defending* a fee application." *In re ASARCO, L.L.C.*, 751 F. 3d 291, 301 (2014) (internal quotation marks omitted). It observed that §330(a)(1) provides "that professional services are compensable only if they are likely to benefit a debtor's estate or are necessary to case administration." *Id.,* at 299. Because "[t]he primary beneficiary of a professional fee application, of course, is the professional," compensation for litigation defending that application does not fall within §330(a)(1). *Ibid.*

We granted certiorari, 573 U. S. ___ (2014), and now affirm.

## II

### A

"Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U. S. 242, 252–253 (2010) (internal quotation marks omitted). The American Rule has roots in our common law reaching back to at least the 18th century, see *Arcambel* v. *Wiseman*, 3 Dall. 306 (1796), and "[s]tatutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar [legal] principles," *Fogerty* v. *Fantasy, Inc.*, 510 U. S. 517, 534 (1994) (internal quotation marks and ellipsis omitted). We consequently will not deviate from the American Rule

"'absent explicit statutory authority.'" *Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health and Human Resources*, 532 U. S. 598, 602 (2001) (quoting *Key Tronic Corp.* v. *United States*, 511 U. S. 809, 814 (1994)).

We have recognized departures from the American Rule only in "specific and explicit provisions for the allowance of attorneys' fees under selected statutes." *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240, 260 (1975). Although these "[s]tatutory changes to [the American Rule] take various forms," *Hardt*, *supra,* at 253, they tend to authorize the award of "a reasonable attorney's fee," "fees," or "litigation costs," and usually refer to a "prevailing party" in the context of an adversarial "action," see, *e.g.,* 28 U. S. C. §2412(d)(1)(A); 42 U. S. C. §§1988(b), 2000e–5(k); see generally *Hardt*, *supra*, at 253, and nn. 3–7 (collecting examples).

The attorney's fees provision of the Equal Access to Justice Act offers a good example of the clarity we have required to deviate from the American Rule. See 28 U. S. C. §2412(d)(1)(A). That section provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort) . . . brought by or against the United States" under certain conditions. *Ibid.* As our decision in *Commissioner* v. *Jean*, 496 U. S. 154 (1990), reveals, there could be little dispute that this provision—which mentions "fees," a "prevailing party," and a "civil action"—is a "fee-shifting statut[e]" that trumps the American Rule, *id.*, at 161.

B

Congress did not expressly depart from the American Rule to permit compensation for fee-defense litigation by professionals hired to assist trustees in bankruptcy proceedings. Section 327(a) authorizes the employment of such professionals, providing that a "trustee, with the

court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist [him] in carrying out [his] duties." In other words, §327(a) professionals are hired to serve the administrator of the estate for the benefit of the estate.

Section 330(a)(1) in turn authorizes compensation for these professionals as follows:

> "After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103—
>
> "(A) *reasonable compensation for actual, necessary services rendered by* the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> "(B) reimbursement for actual, necessary expenses." (Emphasis added.)

This text cannot displace the American Rule with respect to fee-defense litigation. To be sure, the phrase "reasonable compensation for actual, necessary services rendered" permits courts to award fees to attorneys for work done to assist the administrator of the estate, as the Bankruptcy Court did here when it ordered ASARCO to pay roughly $120 million for the firms' work in the bankruptcy proceeding. No one disputes that §330(a)(1) authorizes an award of attorney's fees for that kind of work. See *Alyeska Pipeline*, *supra,* at 260, and n. 33 (listing §330(a)(1)'s predecessor as an example of a provision authorizing attorney's fees). But the phrase "reasonable compensation

for actual, necessary services rendered" neither specifically nor explicitly authorizes courts to shift the costs of adversarial litigation from one side to the other—in this case, from the attorneys seeking fees to the administrator of the estate—as most statutes that displace the American Rule do.

Instead, §330(a)(1) provides compensation for all §327(a) professionals—whether accountant, attorney, or auctioneer—for all manner of work done *in service of* the estate administrator. More specifically, §330(a)(1) allows "reasonable compensation" only for *"actual, necessary services rendered."* (Emphasis added.) That qualification is significant. The word "services" ordinarily refers to "labor performed for another." Webster's New International Dictionary 2288 (def. 4) (2d ed. 1934); see also Black's Law Dictionary 1607 (3d ed. 1933) ("duty or labor to be rendered by one person to another"); Oxford English Dictionary 517 (def. 19) (1933) ("action of serving, helping or benefiting; conduct tending to the welfare or advantage of another").[2] Thus, in a case addressing §330(a)'s predecessor, this Court concluded that the phrase "'reasonable compensation for services rendered' necessarily implies loyal and disinterested service in the interest of" a client. *Woods* v. *City Nat. Bank & Trust Co. of Chicago*, 312 U. S. 262, 268 (1941); accord, *American United Mut. Life Ins. Co.* v. *Avon Park*, 311 U. S. 138, 147 (1940). Time spent litigating a fee application against the administrator of a bankruptcy estate cannot be fairly described as "labor performed for"—let alone "disinterested service to"—that administrator.

This legislative decision to limit "compensation" to

---

[2] Congress added the phrase "reasonable compensation for the services rendered" to federal bankruptcy law in 1934. Act of June 7, 1934, §77B(c)(9), 48 Stat. 917. We look to the ordinary meaning of those words at that time.

"services rendered" is particularly telling given that other provisions of the Bankruptcy Code expressly transfer the costs of litigation from one adversarial party to the other. Section 110(i), for instance, provides that "[i]f a bankruptcy petition preparer . . . commits any act that the court finds to be fraudulent, unfair, or deceptive, on the motion of the debtor, trustee, United States trustee (or the bankruptcy administrator, if any)," the bankruptcy court must "order the bankruptcy petition preparer to pay the debtor . . . reasonable attorneys' fees and costs in moving for damages under this subsection." §110(i)(1)(C). Had Congress wished to shift the burdens of fee-defense litigation under §330(a)(1) in a similar manner, it easily could have done so. We accordingly refuse "to invade the legislature's province by redistributing litigation costs" here. *Alyeska Pipeline*, 421 U. S*.,* at 271.

### III

The law firms, the United States as *amicus curiae*, and the dissent resist this straightforward interpretation of the statute. The law firms and the Government each offer a theory for why §330(a)(1) expressly overrides the American Rule in the context of litigation in defense of a fee application, and the dissent embraces the latter. Neither theory is persuasive.

### A

We begin with the law firms' approach. According to the firms, fee-defense litigation is part of the "services rendered" to the estate administrator under §330(a)(1). See Brief for Petitioners 23–30. As explained above, that reading is untenable. The term "services" in this provision cannot be read to encompass adversarial fee-defense litigation. See Part II–B, *supra.* Even the dissent agrees on this point. See *post,* at 1 (opinion of BREYER, J.).

Indeed, reading "services" in this manner could end up

compensating attorneys for the *unsuccessful* defense of a fee application. The firms insist that "estates *do* benefit from fee defenses"—and thus receive a "service" under §330(a)(1)—because "the estate has an interest in obtaining a just determination of the amount it should pay its professionals." Brief for Petitioners 25–26 (internal quotation marks omitted). But that alleged interest—and hence the supposed provision of a "service"—exists whether or not a §327(a) professional prevails in his fee dispute. We decline to adopt a reading of §330(a)(1) that would allow courts to pay professionals for arguing for fees they were found never to have been entitled to in the first place. Such a result would not only require an unnatural interpretation of the term "services rendered," but a particularly unusual deviation from the American Rule as well, as "[m]ost fee-shifting provisions permit a court to award attorney's fees only to a 'prevailing party,'" a "'substantially prevailing' party," or "a 'successful' litigant," *Hardt*, 560 U. S*.,* at 253 (footnote omitted). There is no indication that Congress departed from the American Rule in §330(a)(1) with respect to fee-defense litigation, let alone that it did so in such an unusual manner.

## B

The Government's theory, embraced by the dissent, fares no better. Although the United States agrees that "the defense of a fee application does not *itself* qualify as an independently compensable service," it nonetheless contends that "compensation for such work is properly viewed as part of the compensation *for the underlying services* in the bankruptcy proceeding." Brief for United States as *Amicus Curiae* 25. According to the Government, if an attorney is not repaid for his time spent successfully litigating fees, his compensation for his actual "services rendered" to the estate administrator in the underlying proceeding will be diluted. *Id.,* at 18. The

United States thus urges us to treat fees for fee-defense work "as a component of 'reasonable compensation.'" *Id.,* at 33; accord, *post,* at 1 (BREYER, J., dissenting). We refuse to do so for several reasons.

1

First and foremost, the Government's theory cannot be reconciled with the relevant text. Section 330(a)(1) does not authorize courts to award "reasonable compensation" *simpliciter*, but "reasonable compensation *for actual, necessary services rendered by*" the §327(a) professional. §330(a)(1)(A) (emphasis added). Here, the contested award was tied to the firms' work on the fee-defense litigation and is correctly understood only as compensation for that work. The Government and the dissent properly concede that litigation in defense of a fee application is not a "service" within the meaning of §330(a)(1); it follows that the contested award was not "compensation" for a "service." Thus, the only way to reach their reading of the statute would be to excise the phrase "for actual, necessary services rendered" from the statute.[3]

Contrary to the Government's assertion, §330(a)(6) does not presuppose that courts are free to award compensation based on work that does not qualify as a service to the estate administrator. That provision specifies that "[a]ny compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application." The Government argues that because time spent *preparing* a fee application is compensable, time spent *defending* it must be too. But the provision cuts the other way. A §327(a) professional's preparation of a fee application is best understood as a

---

[3] The dissent's focus on reasonable compensation is therefore a red herring. See *post,* at 5–6. The question is not whether an award for fee-defense work would be "reasonable," but whether such work is compensable in the first place.

"servic[e] rendered" to the estate administrator under §330(a)(1), whereas a professional's defense of that application is not. By way of analogy, it would be natural to describe a car mechanic's preparation of an itemized bill as part of his "services" to the customer because it allows a customer to understand—and, if necessary, dispute—his expenses. But it would be less natural to describe a subsequent court battle over the bill as part of the "services rendered" to the customer.

The Government used to understand that time spent preparing a fee application was different from time spent defending one for the purposes of §330(a)(1). Just a few years ago, the U. S. Trustee explained that "[r]easonable charges for preparing . . . fee applications . . . are compensable . . . because the preparation of a fee application is not required for lawyers practicing in areas other than bankruptcy as a condition to getting paid." 78 Fed. Reg. 36250 (2013) (emphasis deleted). By contrast, "time spent . . . defending . . . fee applications" is ordinarily "not compensable," the Trustee observed, as such time can be "properly characterized as work that is for the benefit of the professional and not the estate." *Ibid.*

To support its broader interpretation of §330(a)(6), the Government, echoed by the dissent, relies on our remark in *Jean* that "[w]e find no textual or logical argument for treating so differently a party's preparation of a fee application and its ensuing efforts to support that same application." 496 U. S., at 162; see *post,* at 7. But that use of *Jean* begs the question. *Jean* addressed a statutory provision that everyone agreed authorized court-awarded fees for fee-defense litigation. 496 U. S., at 162. The "only dispute" in that context was over what "finding [was] necessary to support such an award." *Ibid.* In resolving that issue, the Court declined to treat fee-application and fee-litigation work differently given that the relevant statutory text—"a court shall award to a prevailing party

. . . fees and other expenses . . . incurred by that party in any civil action"—could not support such a distinction. *Id.,* at 158. Here, by contrast, the operative language— "reasonable compensation for actual, necessary services rendered"—reaches only the fee-application work. The fact that the provision at issue in *Jean* "did not mention fee-defense work," *post,* at 5, is thus irrelevant.

In any event, the Government's textual foothold for its argument is too insubstantial to support a deviation from the American Rule. The open-ended phrase "reasonable compensation," standing alone, is not the sort of "specific and explicit provisio[n]" that Congress must provide in order to alter this default rule. *Alyeska Pipeline*, 421 U. S*.,* at 260.

2

Ultimately, the Government's theory rests on a flawed and irrelevant policy argument. The United States contends that awarding fees for fee-defense litigation is a "judicial exception" necessary to the proper functioning of the Bankruptcy Code. Brief for United States as *Amicus Curiae* 15, n. 7 (internal quotation marks omitted). Absent this exception, it warns, fee-defense litigation will dilute attorney's fees and result in bankruptcy lawyers receiving less compensation than nonbankruptcy lawyers, thereby undermining the congressional aim of ensuring that talented attorneys will take on bankruptcy work. Accord, *post,* at 3.

As an initial matter, we find this policy argument unconvincing. In our legal system, *no* attorneys, regardless of whether they practice in bankruptcy, are entitled to receive fees for fee-defense litigation absent express statutory authorization. Requiring bankruptcy attorneys to pay for the defense of their fees thus will not result in any disparity between bankruptcy and nonbankruptcy

lawyers.[4]

The United States nonetheless contends that uncompensated fee litigation in bankruptcy will be particularly costly because multiple parties in interest may object to fee applications, whereas nonbankruptcy fee litigation typically involves just a lawyer and his client. But this argument rests on unsupported predictions of how the statutory scheme will operate in practice, and the Government's conduct in this case reveals the perils associated with relying on such prognostications to interpret statutes: The United States took the opposite view below, asserting that "requiring a professional to bear the normal litigation costs of litigating a contested request for payment . . . dilutes a bankruptcy fee award no more than any litigation over professional fees." Reply Brief for Appellant United States Trustee in No. 11–290 (SD Tex.), p. 15. The speed with which the Government has changed its tune offers a good argument against substituting policy-oriented predictions for statutory text.

More importantly, we would lack the authority to rewrite the statute even if we believed that uncompensated fee litigation would fall particularly hard on the bankruptcy bar. "Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding," and that is no less true in bankruptcy than it is elsewhere. *Lamie* v. *United States Trustee*, 540 U. S. 526, 538 (2004). Whether or not the Government's theory is desirable as a matter of policy,

——————

[4] To the extent the United States harbors any concern about the possibility of frivolous objections to fee applications, we note that "Federal Rule of Bankruptcy Procedure 9011—bankruptcy's analogue to Civil Rule 11—authorizes the court to impose sanctions for bad-faith litigation conduct, which may include 'an order directing payment . . . of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.'" *Law* v. *Siegel*, 571 U. S. ___, ___ (2014) (slip op., at 12).

Congress has not granted us "roving authority . . . to allow counsel fees . . . whenever [we] might deem them warranted." *Alyeska Pipeline*, *supra,* at 260. Our job is to follow the text even if doing so will supposedly "undercut a basic objective of the statute," *post,* at 3. Section 330(a)(1) itself does not authorize the award of fees for defending a fee application, and that is the end of the matter.

\*    \*    \*

As we long ago observed, "The general practice of the United States is in opposition" to forcing one side to pay the other's attorney's fees, and "even if that practice [is] not strictly correct in principle, it is entitled to the respect of the court, till it is changed, or modified, by statute." *Arcambel*, 3 Dall.*,* at 306 (emphasis deleted). We follow that approach today. Because §330(a)(1) does not explicitly override the American Rule with respect to fee-defense litigation, it does not permit bankruptcy courts to award compensation for such litigation. We therefore affirm the judgment of the Court of Appeals.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

---

No. 14–103

---

## BAKER BOTTS L.L.P. ET AL., PETITIONERS *v.* ASARCO LLC

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[June 15, 2015]

JUSTICE SOTOMAYOR, concurring in part and concurring in the judgment.

As the Court's opinion explains, there is no textual, contextual, or other support for reading 11 U. S. C. §330(a)(1) in the way advocated by petitioners and the United States. Given the clarity of the statutory language, it would be improper to allow policy considerations to undermine the American Rule in this case. On that understanding, I join all but Part III–B–2 of the Court's opinion.

# SUPREME COURT OF THE UNITED STATES

_____

No. 14–103

_____

## BAKER BOTTS L.L.P. ET AL., PETITIONERS *v.* ASARCO LLC

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[June 15, 2015]

JUSTICE BREYER, with whom JUSTICE GINSBURG and JUSTICE KAGAN join, dissenting.

The Bankruptcy Code authorizes a court to award "*reasonable compensation* for actual, necessary services rendered by" various "professional person[s]," including "attorneys," whom a bankruptcy "trustee [has] employ[ed] . . . to represent or assist the trustee in carrying out the trustee's duties." 11 U. S. C. §§327(a), 330(a) (emphasis added). I agree with the Court that a professional's defense of a fee application is not a "service" within the meaning of the Code. See *ante,* at 6. But I agree with the Government that compensation for fee-defense work "is properly viewed as part of the compensation *for the underlying services* in [a] bankruptcy proceeding." Brief for United States as *Amicus Curiae* 25. In my view, when a bankruptcy court determines "reasonable compensation," it may take into account the expenses that a professional has incurred in defending his or her application for fees.

I

The Bankruptcy Code affords courts broad discretion to decide what constitutes "reasonable compensation." The Code provides that a "court shall consider the nature, the extent, and the value of . . . services [rendered], taking into account *all relevant factors*." §330(a)(3) (emphasis

added).   Cf. *Hensley* v. *Eckerhart*, 461 U. S. 424, 437 (1983) ("reemphasiz[ing a trial court's] discretion in determining the amount of a fee award," which "is appropriate in view of the [trial] court's superior understanding of the litigation").  I would hold that it is within a bankruptcy court's discretion to consider as "relevant factors" the cost and effort that a professional has reasonably expended in order to recover his or her fees.

Where a statute provides for reasonable fees, a court may take into account factors other than hours and hourly rates.  *Perdue* v. *Kenny A.*, 559 U. S. 542, 551–557 (2010).  For instance, "an enhancement" to attorney's fees "may be appropriate if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted."  *Id.,* at 555.  And "there may be extraordinary circumstances in which an attorney's performance involves exceptional delay in the payment of fees" that justify additional compensation.  *Id.,* at 556.  These examples demonstrate that increased compensation is sometimes warranted to reflect exceptional effort or resources expended in order to attain one's fees.

In that vein, work performed in defending a fee application may, in some cases, be a relevant factor in calculating "reasonable compensation."  Consider a bankruptcy attorney who earns $50,000—a fee that reflects her hours, rates, and expertise—but is forced to spend $20,000 defending her fee application against meritless objections.  It is within a bankruptcy court's discretion to decide that, taking into account the extensive fee litigation, $50,000 is an insufficient award.  The attorney has effectively been paid $30,000, and the bankruptcy court might understandably conclude that such a fee is not "reasonable."

Indeed, this Court has previously acknowledged that work performed in defending a fee application is relevant to a determination of attorney's fees.  In *Commissioner* v. *Jean*, 496 U. S. 154, 160–166 (1990), the Court held that

fee-defense work is compensable under the Equal Access to Justice Act, 28 U. S. C. §2412(d)(1)(A). The Court quoted with approval the Second Circuit's statement that "[d]enying attorneys' fees for time spent in obtaining them would dilute the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees." 496 U. S., at 162 (quoting *Gagne* v. *Maher*, 594 F. 2d 336, 344 (1979); internal quotation marks omitted).

A contrary interpretation of "reasonable compensation" would undercut a basic objective of the statute. Congress intended to ensure that high-quality attorneys and other professionals would be available to assist trustees in representing and administering bankruptcy estates. To that end, Congress directed bankruptcy courts to consider "whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under" the Bankruptcy Code. §330(a)(3)(F). Congress recognized that comparable compensation was necessary to ensure that professionals would "remain in the bankruptcy field." H. R. Rep. No. 95–595, p. 330 (1977). Cf. *Perdue, supra,* at 552 ("[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case").

In some cases, the extensive process through which a bankruptcy professional defends his or her fees may be so burdensome that additional fees are necessary in order to maintain comparability of compensation. In order to be paid, a professional assisting a trustee must file with the court a detailed application seeking compensation. Fed. Rule Bkrtcy. Proc. 2016(a). The application will not be granted until after the court has conducted a hearing on the matter. §330(a)(1). And "[t]he court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award

compensation that is less than the amount of compensa-
tion that is requested." §330(a)(2).

By contrast, an attorney representing a private party, or
a professional working outside of the bankruptcy context,
generally faces fee objections made only by his or her
client—and those objections typically are made outside of
court, at least initially. This process is comparatively
simple, involves fewer parties in interest, and does not
necessarily impose litigation costs. Consequently, in order
to maintain comparable compensation, a court may find it
necessary to account for the relatively burdensome fee-
defense process required by the Bankruptcy Code. Ac-
counting for this process ensures that a professional is
paid "reasonable compensation."

## II

The majority rests its conclusion upon an interpretation
of the statutory language that I find neither legally neces-
sary nor convincing. The majority says that Congress, in
writing the reasonable-compensation statute, did not
"displace the American Rule with respect to fee-defense
litigation." *Ante,* at 5. The American Rule normally re-
quires "[e]ach litigant" to "pa[y] his own attorney's fees,
win or lose." *Hardt* v. *Reliance Standard Life Ins. Co.*, 560
U. S. 242, 253 (2010).

But the American Rule is a default rule that applies
only where "a statute or contract" does not "provid[e]
otherwise." *Ibid.* And here, the statute "provides other-
wise." *Ibid.* Section 330(a)(1)(A) permits a "court [to]
award . . . reasonable compensation for actual, necessary
services rendered by the trustee, examiner, ombudsman,
professional person, or attorney and by any paraprofes-
sional person employed by any such person." This Court
has recognized that through §330(a), Congress "ma[d]e
specific and explicit [its] provisio[n] for the allowance of
attorneys' fees," and thus displaced the American Rule.

*Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240, 260, and n. 33 (1975) (listing §330(a)'s predecessor among examples of provisions authorizing attorney's fees).

The majority suggests that the American Rule is not displaced with respect to fee-defense work in bankruptcy because §330(a) does not specifically authorize fees for that particular type of work. See *ante,* at 4–5 ("Congress did not expressly depart from the American Rule to permit compensation for fee-defense litigation by professionals hired to assist trustees in bankruptcy proceedings"). To the extent that the majority intends to impose a requirement that a statute must explicitly mention fee defense in order to provide compensation for that work, this requirement is difficult to reconcile with the Court's decision in *Jean*. There, the Court held that the Equal Access to Justice Act authorizes compensation for fee-defense work. See 496 U. S., at 160–166. The fee provision of the Equal Access to Justice Act, as enacted at the time, permitted an "award to a prevailing party . . . of fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States." *Id.,* at 158 (quoting 28 U. S. C. §2412(d)(1)(A) (1988 ed.)). The provision did not mention fee-defense work—but the Court nonetheless held that such work was compensable. See *Jean, supra,* at 160–166. I would do the same here.

The majority focuses on particular words that appear in the Equal Access to Justice Act: "fees," "prevailing party," and "civil action." See *ante,* at 4. But neither the term "fees" nor the phrase "prevailing party" relates specifically to fee-defense work. And even assuming that the phrase "civil action" is more easily read to cover fee litigation than the phrase "actual, necessary services," that difference here is beside the point. I find the necessary authority in the words "reasonable compensation," not the words "actual, necessary services." In order to ensure that each

professional is paid *reasonably* for compensable services, a court must have the discretion to authorize pay reflecting fee-defense work.

The majority asserts that by interpreting the phrase "reasonable compensation," I have effectively "excise[d] the phrase 'for actual, necessary services rendered' from the statute." *Ante,* at 9. But the majority misunderstands my views. The statute permits compensation for fee-defense work as a part of compensation *for the underlying services.* Thus, where fee-defense work is not necessary to ensure reasonable compensation for some underlying service, then under my reading of the statute, a court should not consider that work when calculating compensation.

Indeed, to the extent that the majority bases its decision on the specific words of §330(a), its argument seems weak. The majority disregards direct statutory evidence that Congress intended to give courts the authority to account for reasonable fee-litigation costs. Section 330(a)(6) states that "any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application." This provision does not authorize compensation, but rather *assumes* (through the words "any compensation awarded") pre-existing authorization under §330(a). And the majority cannot convincingly explain why, under its reading of the statute, fee-application is a compensable "actual, necessary servic[e] rendered" to the estate.

The majority asserts that a fee application, unlike fee defense, can be construed as a "service" to the bankruptcy estate. See *ante,* at 9–10. The majority draws an analogy between a fee application and an itemized bill prepared by a car mechanic. See *ibid.* It argues that, like an itemized bill, a fee application is a "service" to the customer. But customers do not generally pay their mechanics for time spent preparing the bill. A mechanic's bill is not a sepa-

rate "service," but rather is a medium through which the mechanic conveys what he or she wants to be paid. Similarly, a legal bill is not a "service" rendered to a client. In fact, ASARCO concedes that attorneys do not charge their clients for time spent preparing legal bills. See Tr. of Oral Arg. 33. A bill prepared by an attorney, or another bankruptcy professional, is not a "service" to the bankruptcy estate.

The majority suggests that a fee application *must* be a service "'because the preparation of a fee application is not required for lawyers practicing in areas other than bankruptcy as a condition to getting paid.'" *Ante,* at 10 (quoting 78 Fed. Reg. 36250 (2013)). But if the existence of a legal requirement specific to bankruptcy were sufficient to make an activity a compensable service, then the time that a professional spends at a hearing defending his or her fees would also be compensable. After all, the statute permits a court to award compensation only after "a hearing" with respect to the issue. §330(a)(1). And there is no such requirement for most attorneys, who simply bill their clients and are paid their fees. But the majority does not believe that preparing for or appearing at such a hearing—an integral part of fee-defense work—is compensable. The majority simply cannot reconcile its narrow interpretation of "reasonable compensation" with §330(a)(6)'s provision for fee-application preparation fees.

In my view, the majority is wrong to distinguish between the costs of fee preparation and the costs of fee litigation. Cf. *Jean*, 496 U. S., at 162 ("We find no textual or logical argument for treating . . . differently a party's preparation of a fee application and its ensuing efforts to support that same application"). And the majority should not distinguish between the compensability of fee litigation under the Equal Access to Justice Act and fee litigation under the Bankruptcy Code. Its decision to do so creates anomalies and undermines the basic purpose of

the Bankruptcy Code's fee award provision.

For these reasons, I respectfully dissent.